**CHURCH OF SCIENTOLOGY OF CALIFORNIA, Plaintiff,**

v.

**Michael J. FLYNN, Defendant.**

**Civ. A. No. 83–2386–MA.**

United States District Court, D. Massachusetts.

Jan. 16, 1984.

Roger Geller, Geller & Weinberg, Boston, Mass., Jonathan Lubell, Cohn, Glickstein, Lurie, Ostrin, Lubell & Lubell, New York City, for plaintiff.

Elizabeth Butler Heath, Morrison, Mahoney & Miller, Boston, Mass., for defendant.

MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is a libel action. The plaintiff, the Church of Scientology of California ("CSC"), seeks damages from the defendant, Michael J. Flynn, for allegedly defamatory statements made by Flynn and subse-

quently published in a Florida newspaper. The matter is before the Court on the defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

Flynn, a Boston attorney, made the statements in November, 1982, in a telephone interview with a reporter from the *Clearwater* (Florida) *Times*. The statements concern Flynn's attempt to appeal a contempt order issued by a Florida court in litigation against the CSC. The complaint alleges that the following portions of the story are defamatory:

> Michael Flynn, Clearwater's consultant on the Church of Scientology, contended Friday that Scientologists have infiltrated the Volusia County court system and stolen two checks that he sent to appeal a court decision here.
>
> *      *      *      *      *      *
>
> Speaking from his Boston office, lawyer Flynn said he mailed two checks, one for $50 and another for $10, to Volusia, and claimed that he even has the bank records to prove it.
>
> "Someone at that end infiltrated the courthouse and intercepted the mailed check," he said. "Someone like a Scientologist."
>
> The filing fee is very important, Flynn said, because it assures him the right to appeal the contempt order.
>
> "It's ridiculous to think I wouldn't pay a $60 filing fee," the Boston lawyer continued, adding that he has several deposits at the First National Bank of Boston and plenty of money in them.
>
> "If you check into this in depth, you'll find that something's afoot in Volusia County," Flynn went on. He has noted before the Durden and Scientology attorneys are "longtime friends."

The complaint further alleges that the story conveys "the false and defamatory meaning that plaintiff, through its members, had improperly and corruptly become involved with the judicial system, had wrongfully interfered with the U.S. mails and had stolen from the U.S. mails and the Courthouse."

Flynn urges that the action must be dismissed chiefly because the allegedly libelous statements are, as a matter of law, incapable of being understood as referring to the plaintiff.[1]

As a preliminary matter, it is necessary to make a choice-of-law. I look to Massachusetts conflict rules to decide which state's law should govern this action. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Whether I apply the doctrine of *lex loci delecti, see Brogie v. Vogel*, 348 Mass. 619, 621, 205 N.E.2d 234 (1965), or the interests analysis embodied in Restatement (Second) of Conflicts of Law § 1818 (1971), *see Pevoski v. Pevoski*, 371 Mass. 358, 360, 358 N.E.2d 416 (1976), the result is the same: Florida law applies. The publication of the libel occurred in Florida; thus, that state is the place where all the elements of the tort alleged were first present. *See Strogoff v. Motor Sales Co.*, 302 Mass. 345, 347, 18 N.E.2d 1016 (1939). Florida contacts also predominate, as that state is the place of injury, the place of much of the relevant conduct, and the place where the relationship between Flynn and the CSC, at least as far as this action is concerned, is centered. *See In Re Air Crash Disaster in Boston, Massachusetts on July 31, 1973*, 399 F.Supp. 1106, 1111–1112 (D.Mass.1975). In any event, however, Florida law provides no precedent closely on point. Therefore, in deciding whether Flynn's statements are reasonably capable of being understood as referring to the plaintiff, I look to general principles of libel law on the assumption that Florida's law is in accord. *Cf. Arcand v. Evening Call Publishing Co.*, 567 F.2d 1163, 1164 (1st Cir.1977) (Where Massachusetts law provided no clear answer to "group libel"

---

**1.** The defendant also argues that the statements are expressions of opinion and hence not actionable and asserts, in addition, that he was privileged to make the statements because they relate directly to a pending judicial proceeding. My resolution of the defendant's first ground for dismissal makes it unnecessary to consider these arguments.

question, Court of Appeals "proceed[ed] on the assumption that Massachusetts law would be in accord with the current state of the authorities, i.e., would not occupy an eccentric minority position."). The parties have done the same.

■ There is no doubt, under those general principles, that a corporation can sue for libel. *See, e.g., Diplomat Electric, Inc. v. Westinghouse Electric Supply Co.*, 378 F.2d 377 (5th Cir.1967) (Florida law). That right extends to not-for-profit corporations like the CSC. *Finnish Temperance Society Sovittaja v. Finnish Socialist Publishing Co.*, 238 Mass. 345, 355, 130 N.E. 845 (1921); Restatement (Second) of Torts § 561(b) (1977).

■ But a corporation, like a private individual, cannot prevail in a libel action unless the allegedly defamatory statement was published "of and concerning" the corporation. *Gilbert Shoe Co. v. Rumpf Publishing Co.*, 112 F.Supp. 228, 229 (D.Mass. 1953); Restatement (Second) of Torts §§ 561, 564 (1977). Whether a corporation's standing in the community was actually diminished is not relevant if the publication at issue did not falsely charge the corporation itself with some kind of impropriety: "One who is not himself libelled cannot recover even though he has been injured by the libel published concerning another." *Gilbert Shoe Co. v. Rumpf Publishing Co.*, 112 F.Supp. at 229 (officer or stockholder of a corporation who is not personally libelled has no right to recover for a libel published of the corporation). Likewise, an allegation that a defendant made a statement, intending to reduce public respect for a person does not, in the absence of a libelous charge directed at that person, present a triable issue. *Corrigan v. Bobbs-Merril Co.*, 228 N.Y. 58, 126 N.E. 260, 262 (1920) ("The question is not so much who was aimed at as who was hit.").

With these general principles in mind, I turn to the central question presented by this motion: whether the defendant's statements are reasonably capable of being understood as having been made "of and concerning" the plaintiff. In particular, I must consider whether the defendant's accusation that "Scientologists" or " 'someone like a Scientologist' " stole his filing fee is capable of being viewed as a libel of the CSC.

For the purposes of this inquiry, I assume, as the plaintiff asserts, that the plaintiff would be able to prove at trial that the CSC is the official branch of the Scientology movement most active in Clearwater, Florida. Thus, I assume that a reference that is capable of being viewed as concerning any of the Scientology movement's not-for-profit religious organizations would, given the facts and circumstances of this case, refer to the CSC.

■ Nevertheless, I conclude that the statements here at issue cannot support a libel action brought by the CSC. Flynn's statements assert that an individual or, perhaps, a small group of individuals, infiltrated the Volusia County courthouse and stole his filing fee. The statement was directed at an individual or a few individuals, not a not-for-profit corporation. Had the defendant said, for example, that it was the practice of the CSC to train its members to infiltrate the courthouse, or reward them for doing so, a different question would be presented. But he did not. His statement was directed at the actions of one or a few individual Scientologists, not at the governing body of the Church of Scientology most active in the Clearwater area. Accusing members of any religious organization of criminal activity is hardly likely to reflect well on the religion's official organs, but the fact that the CSC's reputation in the community may have been diminished by virtue of Flynn's charges against an anonymous individual or individuals does not vest in CSC a right to sue for libel. That conclusion follows naturally from the established principle, noted above, that one who is injured by the libel of another has no right of action. *Gilbert Shoe Co. v. Rumpf Publishing Co.*, 112 F.Supp. at 229.

The case law supports the view that this action should be dismissed. In *Mullins v.*

*Brando*, 13 Cal.App.3d 409, 423, 91 Cal. Rptr. 796, 805 (1970), *cert. denied sub nom. Brando v. Coffman*, 403 U.S. 923, 91 S.Ct. 2231, 29 L.Ed.2d 701 (1971), the actor Marlon Brando alleged that members of the Oakland Police Department, motivated by racial animus, shot and killed an unarmed member of the Black Panthers who was in the process of surrendering peacefully. The president of the Oakland Police Officers Association sued Brando for libel on behalf of his organization. The court treated the president's suit as one brought directly by the association, but held that the organization had no right of action. The court said:

> We recognize, of course, that an unincorporated association, such as the OPOA, can be defamed. The only trouble with OPOA's ability to state a cause of action is simply that there is absolutely nothing in any innuendo or inducement pleaded which by any stretch of the imagination can be construed as defamatory of the organization.

*Id.*

In *Michigan United Conservation Clubs v. CBS News*, 485 F.Supp. 893 (W.D.Mich. 1980), the named plaintiff and several individual hunters alleged that a television broadcast about hunters, part of which had been filmed in Michigan, defamed them. The court ruled that even if it were to assume that the broadcast had defamed some individual hunters, "... the indirect injury which [the organizational plaintiff] claim[s] to have suffered as a result of this would not be compensable." *Id.* at 900.

In addition, in *Mikilonski v. Burt Reynolds Production Co.*, 10 Mass.App. 895, 409 N.E.2d 1324 (1980) (rescript) the court held that the Polish-American Guardian Society had no right to sue the defendant on account of allegedly defamatory state-

ments about Poles he made in a motion picture, because the society was not "the object of the alleged defamations." *Id.* Like the Oakland Police association, the Michigan hunters group, and the Polish-American society, CSC fails to state a cause of action: Flynn's statements refer to individual Scientologists, not to the organization they belong to. *See also Novick v. Hearst Corporation*, 278 F.Supp. 277, 281 (D.Md.1968); *Cohn v. National Broadcasting Co., Inc.*, 414 N.Y.S.2d 906, 909, 67 A.D.2d 140 (1979), *aff'd*, 430 N.Y. S.2d 265, 50 N.Y.2d 885, 408 N.E.2d 672 (1980), *cert. denied*, 449 U.S. 1022, 101 S.Ct. 590, 66 L.Ed.2d 484.

The cases the plaintiff relies on do not alter this conclusion. In *Neiman-Marcus Co. v. Lait*, 107 F.Supp. 96 (S.D.N.Y.1952), the court permitted the corporate plaintiff to sue for defamatory statements published about its employees. *Id.* at 101. The statements at issue there, however, suggested that the corporation had intentionally recruited persons of alleged immoral character, and the court noted that "... it cannot be said as a matter of law that a corporation cannot be damaged in a business way by a publication that it employs seriously undesirable personnel." *Id.*

In *DiGiorgio Fruit Corp. v. American Federation of Labor*, 30 Cal.Rptr. 350, 355, 215 Cal.App.2d 560 (Dist.Ct.App.1963), the court permitted a corporation to sue, but the facts indicate clearly that the publication in question referred to the plaintiff, as a corporation (if not by precise name), and criticized it as such. Finally, in *Sullivan v. Affiliated Publications*, 8 Med.L.Rptr. 1654 (Mass.Super.Ct.1982), another case in which a corporate libel plaintiff was allowed to proceed, the article referred frequently to the names by which the corporate plaintiff is popularly known.[2]

**2.** I have also reviewed those cases which address the "of and concerning" question in the context of suits brought by the CSC or another official branch of the Scientology movement. In *California Church of Scientology v. Cazares*, 638 F.2d 1272 (5th Cir.1981), the allegedly defamatory remarks were clearly addressed at the CSC itself. In *Church of Scientology v. Adams*,

584 F.2d 893 (9th Cir.1978), the court, despite its suggestion "... there is serious doubt that the articles refer to the [CSC]," did not reach the "of and concerning" question on the merits. And in *Church of Scientology v. Siegelman*, 481 F.Supp. 866 (S.D.N.Y.1979), the court did not quote the language which it concluded raised a factual question regarding whether the plaintiff official

■ Although the plaintiff appears not to raise the matter specifically, I have also considered the question whether the CSC may bring a libel action derivatively on behalf of its members. It is settled that a not-for-profit organization may sometimes sue to vindicate its members' rights. *See, e.g., Church of Scientology of California v. Cazares,* 638 F.2d 1272, 1279 (5th Cir.1981). But in order to do so in a libel action, those members must have rights which they could assert in an individual action. *Id.; see also Michigan United Conservation Clubs v. CBS News,* 485 F.Supp. at 900. Here, no individual Scientologists possess such rights. *Arcand v. Evening Call Publishing Co.,* 567 F.2d at 1164–65. Therefore, the CSC may not sue derivatively.

Accordingly, because the defendant's statements are not capable of being understood as having been made "of and concerning" the plaintiff, the defendant's motion to dismiss for failure to state a claim is granted.

SO ORDERED.

branches of the Scientology movement, including the CSC, has been defamed. Again, then, these cases do not in my judgment alter the analysis above.