HAIM EYAL & another[1] *vs.* THE HELEN BROADCASTING
CORP. & another[2].

Norfolk. October 9, 1991. - December 19, 1991.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil*, Dismissal. *Libel and Slander.*

An amended complaint alleging that a statement that the "owner of a
    Brookline [d]elicatessen and seven other people are arrested in connec-
    tion with an international cocaine ring" was written and broadcast in
    the context of "extreme media attention" by the defendants, the opera-
    tor of a radio station and a reporter for the station; that their words
    were intended to refer to the plaintiffs, a corporation conducting a deli-
    catessen business in Brookline and the owner of the corporation, and
    were so understood by a significant number of Brookline residents; and
    that, had the defendants exercised reasonable care, they could have as-
    certained the statement to be false before going ahead and publishing it
    negligently on numerous occasions, sufficiently stated a claim against
    the defendants for defamation of a private person (the owner of the
    corporation) [429-432]; however, with regard to the corporation itself,
    this court concluded as matter of law that the defendants' statement
    was not reasonably susceptible of any defamatory meaning [433-434].

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 20, 1989.

A motion to dismiss was heard by *James P. Lynch, Jr.*, J.,
and the case was reported by him to the Appeals Court. The
Supreme Judicial Court transferred the case on its own
initiative.

*Robert L. Sheketoff* (*Marshall Newman* with him) for the
plaintiffs.

*Eugene R. Richard* for the defendants.

[1]Haim's Delicatessen, Inc.

[2]Robert McMahon.

GREANEY, J. The plaintiffs, Haim Eyal (Eyal) and Haim's Delicatessen, Inc. (corporation), brought an action in the Superior Court seeking damages from the defendants, The Helen Broadcasting Corp. and Robert McMahon, for defamation.[3] The defendants filed a motion to dismiss the plaintiffs' amended complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), on the ground that the plaintiffs' complaint was inadequate to state claims for defamation. A judge of the Superior Court allowed the motion to dismiss and reported the correctness of his ruling to the Appeals Court.[4] Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We transferred the case to this court on our own motion. We conclude that the claim brought by Eyal should not have been dismissed, and that the claim brought by the corporation was correctly dismissed.

The amended complaint states the following. Eyal resides in Brookline. He is the owner of the corporation which has a principal place of business at 1657 Beacon Street in Brookline, and conducts business under the name and style of "Haim's Deli." The Helen Broadcasting Corp. operates radio station WEEI, which broadcasts in the Boston area and throughout New England. McMahon is a member of the staff and a news reporter for WEEI. Prior to the events giving rise to this case, both Eyal and the corporation enjoyed good reputations among restaurateurs and others for honesty, integrity, good character, and forthrightness in business and personal affairs.

McMahon and WEEI "on or about April 29, 1988, . . . maliciously and negligently composed, wrote and transmitted

---

[3]The amended complaint also brought claims for defamation against four other defendants: News Group Boston, Inc., doing business as The Boston Herald, Shelley Murphy, Leo Abbott, and Alan Levin, all of whom are employed by News Group Boston, Inc. These defendants are not involved in this appeal.

[4]In making the report, the judge concluded that the resolution of the legal issues involved in the claims against the defendants might obviate the necessity of a trial on claims against other defendants or at the least simplify any trial that would take place. He therefore also ordered further proceedings in the case stayed.

via broadcasts . . . the following false and defamatory state-
ment of and concerning [the] [p]laintiffs: 'The owner of a
Brookline [d]elicatessen and seven other people are arrested
in connection with an international cocaine ring.' " The
broadcasts were "numerous," and were aired in the context
of "extreme media attention to the story" some of which the
amended complaint describes as noted below.[5] Had WEEI
and McMahon, at the time of composing, writing, and trans-
mitting the story, "exercised reasonable care," they "could

---

[5]On April 29, 1988, the Boston Herald published an article written by
Shelley Murphy. The article stated that investigators had arrested several
members of an international cocaine ring allegedly run by the "Israeli Ma-
fia," led by a "ringleader" who operated a Brookline delicatessen. The ar-
ticle bore a large headline stating that "Feds bust local arm of 'Israeli
coke ring,' " and a prominent caption below the headline stating that
"Gang operated out of a Brookline deli."

On the morning of April 29, 1988, Boston television Channel 5 broad-
cast a story about the arrests, including the allegation that an international
cocaine ring was operating out of a Brookline delicatessen. Boston televi-
sion Channel 7 broadcast a story that included the allegation that the co-
caine ring was operated by an "Israeli Mafia." Later that day, Channels 4
and 5 broadcast stories concerning a press conference about the drug ar-
rests. The press conference was held at the Federal courthouse. The Chan-
nel 5 report mentioned that the gang had operated out of a Brookline deli-
catessen; the Channel 4 report story mentioned that the cocaine ring was
led by people associated with Israeli organized crime.

At 6 P.M. on April 29, 1988, Channel 5 broadcast a story about the
arrests which described an Israeli organized crime ring. The plaintiff deli-
catessen was used as a backdrop for this story and was "clearly identified"
in it.

On·April 30, 1988, the Boston Herald published two more articles con-
cerning the arrests written by Alan Levin and Murphy. These articles de-
scribed the arrests in greater detail, and discussed the existence of an "Is-
raeli Mafia," operating in Boston, New York, Miami, and Los Angeles,
One of the articles also stated that "Haim's Deli on Beacon Street in
Brookline" was one of the meeting places for the alleged group and that
one of those arrested had formerly worked as a cashier at Haim's Deli.
The Herald also published a cartoon on its editorial page, depicting a res-
taurant counter and a man in a butcher's apron being placed under arrest.
The layout of the restaurant in this cartoon is very similar to that of the
plaintiff delicatessen, and is unlike the layout of any other delicatessen
located in Brookline.

In addition to the above, the amended complaint also incorporated in the
claims against the defendants details of other media stories described in
other counts of the complaint against different defendants.

have ascertained that the allegations announced by them in the numerous radio broadcasts . . . were false and defamatory."

The amended complaint goes on to allege that the "[d]efendants WEEI and McMahon, [were at fault] in so composing, writing and transmitting the radio broadcasts . . . and were meaning and intending to convey and actually conveyed the meaning in the broadcasts that the [p]laintiff[s] . . . [were] involved in criminal activity, to wit: being . . . member[s] of an international cocaine ring; being actively involved in drug trafficking; operating Haim's Deli as a front for a gang of cocaine drug dealers, and have held the [p]laintiff[s] . . . up to ridicule, scorn, hatred and contempt."

We examine the sufficiency of the above claims in light of the principles that: (a) the allegations in the complaint, as well as such reasonable inferences as may be drawn therefrom in favor of Eyal, are to be taken as true, *Balsavich* v. *Local 170, Int'l Bhd. of Teamsters*, 371 Mass. 283, 287 (1976); *Druker* v. *Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976), and (b) a complaint is sufficient "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957).

1. *Claim by Eyal.* A false statement that a person has been arrested for criminal involvement in an international cocaine ring falls within the definition of a defamatory statement. See *Poland* v. *Post Publishing Co.*, 330 Mass. 701, 704 (1953) ("Words may be found to be defamatory if they hold the plaintiff up to contempt, hatred, scorn, or ridicule, or tend to impair his standing in the community"). To succeed, however, on an action for defamation, a plaintiff must additionally show that the alleged defamatory statement published by the defendant was "of and concerning" the plaintiff. *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 288, 292 (1964). *New England Tractor-Trailer Training of Conn., Inc.* v. *Globe Newspaper Co.*, 395 Mass. 471, 474

(1985), and cases cited. Restatement (Second) of Torts §
558 (1977). The statement made by the defendants in this
case and allegedly repeated on several occasions — "The
owner of a Brookline Delicatessen and seven other people
were arrested in connection with an international cocaine
ring" — did not mention Eyal by name. The critical inquiry,
therefore, is whether, in light of the standards governing a
motion under rule 12 (b) (6) set forth above, which generally
operate in a plaintiff's favor, Eyal has alleged enough to meet
the "of and concerning" requirement for defamation of a pri-
vate person.[6]

In *New England Tractor-Trailer Training of Conn., Inc.*,
*supra*, we held that a defamation plaintiff could prove that
the defendant's words were "of and concerning" him by
showing "either that the defendant intended its words to re-
fer to the plaintiff and that they were so understood, *or* that
the defendant's words reasonably could be interpreted to re-
fer to the plaintiff and that the defendant was negligent in
publishing them in such a way that they could be so under-
stood" (emphasis in original). *Id.* at 483. See *ELM Medical
Laboratory, Inc.* v. *RKO Gen., Inc.*, 403 Mass. 779, 784-785
(1988); Restatement (Second) of Torts, *supra* at § 564 com-
ment a. As can be seen, this articulation of the test poses

---

[6]The defendants persuaded the judge below that the claim by Eyal was
governed by the test for group defamation. Consequently, dismissal of his
claims was predicated on the ground that the statement by the defendant
was directed at a group or class of delicatessen owners, and Eyal's com-
plaint did not allege sufficient facts to permit a conclusion that the group
reference pertained personally to Eyal.

This conclusion was wrong because this is not a case of group defama-
tion. In such a case, an individual member of the defamed class cannot
recover for defamation unless "the group or class is so small that the mat-
ter can reasonably be understood to refer to the member, or . . . the cir-
cumstances of publication reasonably give rise to the conclusion that there
is particular reference to the member." Restatement (Second) of Torts,
*supra* at § 564A. There is no reference to a group or class in the defend-
ants' statement. The statement refers to only one delicatessen owner, but
does not name him. Thus, the proper test for the "of and concerning" ele-
ment is not the test for group defamation. Rather, we apply the test for a
defamatory statement which refers to only one person, but does not iden-
tify that person by name.

alternative standards, the first subjective in nature and the second objective.

Eyal alleged in his amended complaint that the statement that had been composed and transmitted by the defendants was actually intended by them to apply to him and was so understood by a significant number of Brookline residents. These assertions are to be taken as true, notwithstanding expressions of denial and incredulousness as to ultimate proof by the defendants. "If the defendant *intends* to refer to a particular person, the communication will be deemed 'of and concerning' that person, if it is so understood by the recipient of the communication, no matter how bizarre or extraordinary it is that the communication was in fact so understood. This is simply an application of the very expansive construction of proximate cause that the law of torts has always granted in intentional conduct situations; the defendant cannot complain that his intended result was accomplished through a circuitous route. '[I]t is unimportant that the recipient was extraordinarily perceptive, and that Sherlock Holmes himself would not have identified the plaintiff as being the person described.' " (Emphasis in original) (Footnotes omitted). R.A. Smolla, Law of Defamation § 4.09[3] (1991). For rule 12 (b) (6) purposes, Eyal's amended complaint alleged enough to satisfy the subjective standard described above for the "of and concerning" element of defamation.

The amended complaint was also sufficient to satisfy the objective standard. Eyal alleged that Brookline residents would have understood the defendants' statement as applying to him because the statement was composed and transmitted in the context of "extreme media attention" to the story which the amended complaint set forth in some detail. See note 5, *supra.* He further alleged: (1) that, had the defendants exercised reasonable care, they could have ascertained the statement to be false, (2) that the defendants nevertheless went ahead and published it "negligently," and (3) that they did so on "numerous" occasions "on or about April 29, 1988." Under these allegations, Eyal could prove, for exam-

ple, that the defendants were aware of the other print and electronic media stories about the arrests, that they either took their statement from those sources, or continued to broadcast it with knowledge of the other stories (in either event without regard to accuracy), and that the defendants reasonably should have anticipated that WEEI listeners, based on the widespread attention to the story that had developed, and continued to develop, would identify Eyal as the Brookline delicatessen owner who had been arrested. Other combinations of facts may also be proved under the amended complaint which could establish the "of and concerning" element under the objective standard described in *New England Tractor-Trailer Training of Conn., Inc., supra.* At this very preliminary stage, it does not appear beyond doubt that Eyal will be unable to prove a set of facts that would support a finding that the defendants' statements were "of and concerning him" under this standard. Eyal's claim in the amended complaint against the defendants, therefore, is a good pleading as to that theory as well, and defects, if any, in his ultimate proof will have to await exposure at the summary judgment stage or later.[7]

---

[7]Because defamation is a traditionally disfavored action, some Federal courts have applied a stricter standard to complaints for defamation and have required defamation plaintiffs to plead the elements of their claims with specificity in order to survive a motion to dismiss under Fed. R. Civ. P. 12 (b) (6). See, e.g., *Pond* v. *General Elec. Co.,* 256 F.2d 824, 828 (9th Cir.), cert. denied, 358 U.S. 818 (1958) (defamation plaintiff did not state a claim for relief where he failed to allege falsity; statement was not libelous on its face, and plaintiff failed to allege extrinsic facts making the statement libelous); *Walters* v. *Linhof,* 559 F. Supp. 1231, 1234 (D. Colo. 1983) (claim for defamation subject to dismissal for failure to set out substantially words alleged to be defamatory and untrue and for failure to allege facts establishing publication); *Liguori* v. *Alexander,* 495 F. Supp. 641, 648 (S.D.N.Y. 1980) (claim for defamation subject to dismissal unless complaint sets out defamatory statement with specificity); *National Bowl-O-Mat Corp.* v. *Brunswick Corp.,* 264 F. Supp. 221 (D.N.J. 1967) (defendant's counterclaim for defamation dismissed for failure to set out the alleged defamatory statements with particularity, and for failure to plead the dates of the alleged publication of the statements); *Cimijotti* v. *Paulsen,* 219 F. Supp. 621, 622 (N.D. Iowa 1963) (defamation is a disfavored action, and must always be pled with specificity); *Foster* v. *United States,* 156 F. Supp. 421 (S.D.N.Y. 1957) (slander complaint subject to

2. *Claim by the corporation.* The corporation argues that
the statement made by the defendants could be understood to
be "of and concerning" it because the other media coverage
of the story, see note 5, *supra*, directed attention to the deli-
catessen as the place where the alleged "Israeli Mafia" met
and planned crimes. However, the context in which the de-
fendants' statement was spoken and received has importance
only if the statement itself can be reasonably susceptible of a
defamatory meaning as to the corporation. See *Jones* v.
*Taibbi*, 400 Mass. 786, 791-792 (1987), and cases cited.
Whether such a defamatory meaning exists is a question of
law. *Id.* at 792. We conclude that the defendants' statement
is not reasonably susceptible of any meaning defamatory to
the corporation.

To be capable of being found defamatory, the defendants'
statement would have to hold the corporation up to disdain
or disfavor in the community. *Poland* v. *Post Publishing Co.*,
330 Mass. 701 (1953). A corporation, of course, cannot be
arrested. The defendants' statement referred solely to the ar-
rest of eight individuals and made no mention of the corpora-
tion. The corporation, therefore, was not the object of the
statement, see *Mikolinski* v. *Burt Reynolds Prod. Co.*, 10
Mass. App. Ct. 895 (1980), and it is clear that nothing was
insinuated in the statement about the corporation. Reports in
other media sources may have focused more directly on the
delicatessen as a place where criminal activity occurred, but

dismissal for failure to set out the allegedly slanderous statements substan-
tially as the defendant had uttered them). None of the defects in the com-
plaints involved in these cases is present here, where the allegedly defama-
tory statement is set out verbatim and publication and extrinsic facts are
stated with particularity. As a result, the plaintiffs' amended complaint is
to be analyzed under the traditional standard governing rule 12 (b) (6)
motions set forth in *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), leaving
fatal defects in the potential proof to be more properly decided under
Mass. R. Civ. P. 56, 365 Mass. 824 (1974), after the completion of a more
expanded record. See *Cefalu* v. *Globe Newspaper Co.*, 8 Mass. App. Ct.
71, 74 (1979) (indicating that courts, within the area of libel, have been
more favorably inclined to grant summary judgment in order to protect the
interests of the press and news media guaranteed by the First Amendment
to the United States Constitution).

the broader and more intensive commentary done by others on the story cannot serve to make the statement capable of a defamatory meaning if the defendants' words themselves have no application to the corporation. "Whether a corporation's standing in the community was actually diminished is not relevant if the [defendant's statement] did not falsely charge the *corporation itself* with some kind of impropriety" (emphasis added). *Church of Scientology of Cal.* v. *Flynn*, 578 F. Supp. 266, 268 (D. Mass. 1984). Cf. *Church of Scientology of Cal.* v. *Cazares*, 638 F.2d 1272, 1287-1289 (5th Cir. 1981) (summary judgment matter· holding that statement which conveys no defamatory meaning cannot be made libelous by imputation of illogical and attenuated inferences).

Finally, we reject the corporation's argument that the defendants' defamed it by allegedly defaming Eyal. As a general rule someone "who is not himself libelled cannot recover even though he has been injured by the libel published concerning another." *Church of Scientology of Cal.* v. *Flynn*, *supra*, quoting *Gilbert Shoe Co.* v. *Rumpf*, 112 F. Supp. 228, 229 (D. Mass. 1953). See *Provisional Gov't of the Republic of New Afrika* v. *American Broadcasting Cos.*, 609 F. Supp. 104, 108 (D.D.C. 1985); R.A. Smolla, Law of Defamation, *supra* at § 4.11[2]. The amended complaint sets out a lengthy statement of facts which makes this general rule applicable to it. The corporation argues that this case is similar to *Merrill* v. *Post Publishing Co.*, 197 Mass. 185 (1908), which held that a false statement that a man's sister had been arrested for larceny could be found to have defamed her brother as well. *Id.* at 190-191. *Merrill* is not on point. The remarks held to be libelous in *Merrill* were embedded in a lengthy article discussing the family's relations at length and mentioning the brother several times. *Id.* at 186-188. The article itself, read as a whole, clearly implied improper conduct on the brother's part. By way of contrast, the defendants in this case uttered a one-sentence statement which referred by name to neither Eyal nor to the corporation and insinuated nothing about the latter.

The order allowing the motion to dismiss by the defendants, Helen Broadcasting Corp. and Robert McMahon, is reversed as to the claim for defamation made in the amended complaint by Haim Eyal, and affirmed as to the claim for defamation made therein by Haim's Delicatessen, Inc. The case is remanded to the Superior Court for proceedings consistent with this opinion.

*So ordered.*