Cratsley, J.
In this action plaintiffs, Shawn T. Collins (“Collins”) and John P. Swist (“Swist”), seek a declaration that the regulations of defendant Massachusetts Department of Correction (“Department”) regarding the types of materials inmates are allowed to display on their cell walls are too broad, and thus violate plaintiffs’ rights under both Federal and State Constitutions. Plaintiffs seek to enjoin the Department from interfering with their speech and expression unless such interference is reasonably related to legitimate penological interests.
The Department now moves to dismiss the action for failure to state a claim upon which relief can be granted, or in the alternative, for summary judgment. For the reasons stated below, defendant’s motion to dismiss is denied and its motion for summary judgment is allowed.
FACTS
Collins and Swist are state prisoners currently confined at the medium-security Old Colony Correctional Center (“OCCC”) in Bridgewater, Massachusetts. OCCC is considered to be the most secure of the Department’s medium-security facilities.
Pursuant to an OCCC regulation set forth in the Inmate Orientation Handbook, only family photographs and “institution calendars” may be affixed to one 2’ x 3’ area outlined in brown paint above the television in each cell. No other photographs or items may be attached to walls, lockers or appliances. Affidavit of Paul Murphy (“Murphy”) at 2. Inmates are, however, permitted to affix a wide variety of materials to the inside of their foot lockers, provided that such materials are not so offensive or inflammatory as to cause security concerns. Id. Foot lockers may be left open while inmates are in their cells.
In accordance with the regulations, Collins is prohibited from displaying his drawings and artwork. Swist is prohibited from displaying a map of the world and various political symbols, which are “aimed at government in general,” and are an “expression of [his] displeasure at the current trend in American politics.”[2]
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must take as true the allegations of the complaint and any inferences favorable to the plaintiff. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The “complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
Here, it cannot be said that a restriction on plaintiffs’ right to display what they wish does not give rise to a claim which may entitle them to relief. Accordingly, the defendant’s motion to dismiss for failure to state a claim must be denied.
Pursuant to Mass.R.Civ.P. 56, summary judgment is appropriate where there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The movant has the burden of proving the absence of a triable issue and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); Community Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976).
When a prison regulation impinges on an inmate’s constitutional rights, the regulation is nonetheless valid if it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 88 (1987). Prison administrators should be accorded wide latitude in creating policies and regulations that in their judgment are necessary to preserve internal order and discipline. See Libby v. Commissioner of Correction, 385 Mass. 421, 434 (1992). Subjecting the day-to-day judgments of prison officials to a strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt solutions to the problems of prison administration. Turner, supra at 88.
In Turner, the Supreme Court outlined several factors which are relevant in determining the reasonableness of the regulation at issue. First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. In Perito v. Superintendent, Mass. Correctional Institution, 34 Mass.App.Ct. 1114 (1993), a prisoner challenged the prohibition of his posting a calendar depicting a nude female under a similar cell decorum rule. The Court held that the Superintendent had established a legitimate penological objective for the rule — to preserve security and order by excluding materials which have the potential for creating tension among prisoners and female staff members.
*260 Similarly here, Superintendent Murphy has averred legitimate penological objectives for regulating the content of the items which may be posted, as “[t]he display of non-approved materials may lead to the posting of gang-related pictures, logos, colors, or slogans, or material offensive to particular racial, ethnic or other groups, and thus increase the already existing tensions of this nature.” Murphy Affidavit at 3. Further, “it is advantageous from a security perspective to maintain an institution-wide degree of uniformity in cell furnishings.” Id. The connection between the Department’s regulation and the asserted goal is not so remote as to render the policy arbitrary or irrational. Turner, supra at 88. The deference given to prison administrators in establishing the connection between a regulation and institutional security flows from the premise that internal prison security is central to all other corrections goals. Pell v. Procunier, 417 U.S. 817, 823 (1974).
A second factor relevant to determining the reasonableness of a prison regulation is whether there remain open to inmates alternative means of exercising the right in question. Turner, supra at 88. Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference normally given to corrections officials. Id.
Here, plaintiffs are not entirely prohibited from possessing or showing the materials in question. Inmates may also affix a wide variety of materials to the inside of their foot lockers, provided that such materials are not so offensive or inflammatory as to cause security concerns. See Murphy affidavit at 2. Foot lockers may be left open while inmates are in their cells.[3] Thus, the second prong of the Turner test is met.
Third, a court must consider the impact that an accommodation of the asserted right would have on guards and other inmates. Turner, supra at 88. When accommodation of an asserted right would have a significant “ripple effect” on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials. Turner, supraat 88. Here, Swist wishes to post various political symbols, aimed at government, which are an expression of his displeasure at current trends in American politics. These items seem to be the very type capable of producing the “ripple effect” contemplated in Turner.
Finally, the absence of ready alternatives is also evidence of the reasonableness of a prison regulation. See Block v. Rutherford, 468 U.S. 576, 587 (1984). If there exists an obvious, easy alternative to the regulation that does not jeopardize institutional security, the regulation may appear to be an “exaggerated response” to a prison concern. See Turner, supra at 89. Here, plaintiffs have alternative means of displaying their items. They may hang them on the inside door of their foot lockers (unless they are deemed to be too offensive or inflammatory), or may show them by hand. Beyond these methods, there seem to exist no ready alternatives that could adequately fulfill the purpose the regulation in question.[4]
While modifying the regulation in question to allow any non-inflammatory item to be posted on the allotted 2’ x 3’ area might theoretically increase prisoners’ rights of speech without jeopardizing the Department’s penological interests, this Court is unable to declare the regulation unconstitutional as it stands today. The line drawn by the defendant meets contemporary constitutional requirements and avoids case-by-case analysis and individual legal challenges.
ORDER
For the forgoing reasons, it is hereby ORDERED that the Defendant’s motion for summary judgment is GRANTED.

Collins’ artwork includes drawings of animals, a motorcycle, people’s faces, a unicorn and a samurai soldier. (Photocopies attached to Collins’ Affidavit.) A sample of the items Swist is prohibited from displaying on his cell wall include 18th-century New England and Southern flags and a “Wizard of Id” comic strip. (Photocopy attached to Swist’s Supplemental Affidavit.)

An inmate’s ability to display items on the inside of his foot locker and his ability to have the foot locker open when he is in his cell weighs heavily in our analysis of the second Turner prong. Collins was informed on 9/24/94 that, in an attempt to allow inmates to more freely express themselves, items may be posted on the inside door of their foot lockers. Plaintiffs’ Exhibit C at 1.

Collins’ thoughtful artwork cannot reasonably be viewed as posing a risk to prison security or of causing an adverse ripple effect on fellow inmates or prison staff. But however innocuous his drawings may be, they are surelyjust a fraction of the countless pictures and other items for which individual determinations of suitability would have to be made. A case-by-case review of suitability is not an “obvious, easy alternative’’ to the regulation.