Agnes, Peter W., J.
Introduction
1.The plaintiff, Norma Gonzalez (hereinafter “Norma”) has brought this civil action against the defendants, Eliezer Katz, M.D.; Aaron Johnson, M.D., F.A.C.S.; Andrew Duffy, M.D., F.A.C.S.; Michelle Z. Haloversen, N.P., M.S., C.C.T.C.; UMass Memorial Health Care, Inc.; UMass Memorial Medical Center, Inc.; UMass Memorial Medical Group, Inc.; The New England Organ Bank; Sheila P. Harms, R.N., B.S., C.P.T.C.; Sharon B. Mathews, R.N., and Anne L. Lally, M.D. (hereinafter the “MedicalProfessionals”), seeking damages incurred from the alleged wrongful death of her husband, Nelson Gonzalez (hereinafter “Nelson”), on behalf of herself and her and Nelson’s minor child, Josué.
2. Three of the Medical Professionals, The New England Organ Bank, Sheila P. Harms, and Sharon B. Mathews (hereinafter the “Organ Professionals”) have moved for dismissal pursuant to Mass.R.Civ.P. 12(b)(6) under the theory that the Promotion of Anatomical Science Act (hereinafter PASA), codified at Gen. Laws c. 113, §§1-14, provides the Organ Professionals immunity from tort liability because they acted in “good faith” with respect to the organ transplantation.
3. For the reasons set forth below, this court concludes that the “good faith” provision in the law does not affect the common-law theories of tort liability upon which the plaintiffs rely; and therefore, the defendants’ motion is DENIED.
Background
4. Taken in the light most favorable to the non-moving party, the facts of the case are these, according to Norma’s Third Amended Complaint:[3] Nelson was diagnosed with hepatic encephalopathy, a.k.a., liver failure, which eventually resulted in a liver transplantation on February 4th, 2002. The donor of the liver died of a rare brain cancer and donated his liver, among other organs to the New England Organ Bank. Nurse Harms and Nurse Mathews participated in the collection, assessment, and dissemination of organ donor health information.
5. Norma alleges that the Organ Professionals knew or should have known that x-rays of the donor’s chest raised a question, material to a rational assessment of the risks of transplantation of the donor’s liver to Nelson, as to whether the rare brain cancer had metastasized into one or more parts of his body.
6. Norma alleges that on three separate occasions, chest x-rays were performed on the donor which indicated lymphadenopathy in the donor’s chest cavity. Norma alleges that the Medical Professionals, including the Organ Professionals, failed to rule out metastatic cancer as the cause of the lymphadenopathy. Additionally, Norma alleges that the rare brain cancer, which the donor died from, made potential donors poor candidates for donation because of the unacceptably high risk of transmission of cancer to organ recipients.
7. Norma alleges that the Organ Professionals had duties, described in New England Organ Bank’s statement to the public of its mission and major activities, to “evaluate the potential donor’s medical condition, maintain clinical support throughout the organ recovery process, and manage the complex logistics of the recovery, preservation, and distribution process.” Norma claims that the Organ Professionals failed to properly assess the health history of the donor which *352 resulted in Nelson receiving a diseased liver. Nelson was diagnosed with the metastatic rare cancer which the donor died from. Nelson died on February 7th, 2003.
Discussion
A.Standard for Review
8. The standard of review for a motion to dismiss pursuant to rule 12(b)(6) is well settled. We take as true “the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiffs favor . . .” Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404, 407 (1995). In evaluating the allowance of a motion to dismiss, we are guided by the principle that a complaint is sufficient “unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 47 (1998). The sufficiency of the claims raised in the plaintiffs complaint is examined by accepting the allegations, and such reasonable inferences as maybe drawn therefrom, as true. See Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991).
B.History of Organ Donation Legislation
9. In 1968, Congress promulgated the Federal Uniform Anatomical Gift Act (hereinafter the “UAGA”). Twenty-nine states, including the District of Columbia, adopted the 1968 act. Massachusetts was one of the states. In 1987, Congress promulgated a revised version of the act, which twenty-three states, and the Virgin Islands, adopted. In Massachusetts, the UAGA was codified at Gen. Laws c. 113, §§8-14 and is found in the chapter titled the Promotion of Anatomical Science Act (hereinafter “PASA”).[4] PASA sets forth the methods for making an anatomical gift, the priority of people authorized to make such a gift, and the circumstances when such a gift is to be considered null and void. Additionally, PASA provides that a person, including a corporation, agency, association or any other legal entity, acting “in good faith in accordance with the terms of G.L.c. 113, §§8-14, or under the anatomical gift laws of another state or a foreign country shall not be liable for damages in any civil action or be subject to prosecution in any criminal proceeding.” G.L.c. 113, § 13(c).
C.Structure of PASA
10. On its face and as applied by the courts, PASA regulates conduct related to donation of organs of deceased persons and the allocation of these organs to potential transplant recipients. See G.L.c. 113, §§8-14. As our Supreme Judicial Court noted in Carey v. New England Organ Bank, 446 Mass. 270, 272 (2006), PASA was designed to encourage donations of anatomical gifts “by eliminating uncertainty as to the legal liability of those authorizing and receiving anatomical gifts, while respecting dignified disposition of human remains.” PASA does not regulate or prescribe the clinical processes by which the medical suitability of organs for transplantation is determined. There is nothing in the language of its provisions or its histoiy to suggest that its purpose was to supersede common-law theories of tort liability with respect to the consequences of medical decisions made about whether particular organs which have been donated are suitable for transplantation. Therefore, this court concludes that PASA’s limited protections from liability does not extend into the clinical and professional judgments made as to the suitability for transplantation.
11. The first five sections of PASA establish a scheme for the disposition of organs and bodies of deceased persons in Massachusetts.[5] The Code of Massachusetts Regulations and the Department of Public Health confirms the purpose of PASA [§§8-14] at 105 CMR 800.001: (A) 105 CMR 800.000 sets forth for the purpose of interpreting and implementing M.G.L.c. 113, §§8-14. (B) It is the intent of the law and the regulations to establish a uniform system for requesting consent to anatomical gifts in order to increase supply of organs and tissues for the purposes of transplantation, therapy, research, and education.
12. There is a dearth of legislative history in Massachusetts with respect to PASA; therefore, this court turns to the comments, specifically those embodied in the Prefatory Note, of the UAGA for aid in evincing the drafter’s intent as to what category of individuals and circumstances would be protected from civil or criminal liability. The UAGA Prefatory Note reads as follows: “The scope of the Act continues to be limited to procurement. It does not cover processing, except for a provision requiring coordination of procurement between hospitals and procurement organizations.” Section 9. It does not cover distribution, except for a provision prohibiting the sale of purchase. Section 10. The “UAGA does not address a donee’s post-recovery communications with the consenting [donor] family members.” Carey v. New England Organ Bank, 17 Mass. L. Rptr. 582 [*1] (2004), further rev. 446 Mass. 270 (2006).[6] This court also noted, “[n]othing in its history suggests that UAGA was intended to cut off liability when physicians or hospitals knowingly or recklessly mislead family donor’s and frustrate the donor’s actual and express intent.” Carey, 17 Mass. L. Rptr. [582], at *28-*29 citing Perry v. Saint Francis Hospital & Med Ctr., 886 F.Sup. 1551, 1559 (Kan. 1995).
13. PASA and the UAGA are “donor driven” laws, which provide little insight as to the donee, save the strict requirement that donor Organs be tested for suitability prior to transplantation.[7] In Colavito v. New York Organ Donor Network, Inc., 03-CV-4187 (E.D.N.Y. 2005) (DLI), the court concluded, “in light of the stated purposes of the statute, where effects on donees are never addressed, lawmakers may not have foreseen the statute being used by donees to obtain damages *353 for misdirected organ donations. Just because donees are mentioned in the statute does not mean that a cause of action was created for them.” In Williams v. Hoffman, 66 Wis.2d 145 (1974), the court held that the UAGA does not confer immunity to an organ procurement organization under certain circumstances indicating that the Wisconsin act applied only to 1) the mechanism of giving and receiving anatomical gifts, 2) the determination of time of death, and 3) the procedures following death. The court ruled, “Since the ‘terms of the section’ do not extend to the treatment of the donor prior to death, nor to treatment of the live transplant donee, we conclude that the liability limitation does not apply to such treatment.” It follows that since the statute does not address the rights of donees vis-a-vis an organ procurement organization that knowingly recommends the distribution of organs potentially tainted with a nefarious type of cancer, the legislature did not intend to create an immunity to protect organ professionals when they recklessly or negligently procure or distribute deadly organs.
14. Norma alleges wrongful conduct in the treatment of a live transplant donee. PASA does not address aggrieved donee issues, as PASA is a “donor driven” law. The Organ Professionals have moved for dismissal based upon a fictional immunity, which they believe is found in PASA. PASA does not protect the Organ Professionals vis-a-vis a donee who received an alleged cancer-riddled organ. Because PASA does not extend to this realm, the “good faith" immunity provision is inapplicable and may not successfully be asserted by the Organ Professionals in the instant case.
B. Common-Law Theories of Tort Liability
15. In Setiembre v. Mid-America Transplant Ass’n, 135 S.W.3d 527, 533, the court held that the UAGA does not immunize a medical provider from liability for ordinary negligence while procuring body parts. While Massachusetts’ courts have not yet grappled with death from alleged deadly organ transplantation, there is no reason to suppose that ordinary principles of negligence law would not apply to a situation, as Norma alleges, in which the Organ Professionals knew — or should have known — that the donor’s cancer had metastasized — by not only results from pretransplantation testing but also from visual inspection of enlarged lymph nodes in the chest cavity, that a claim of negligence would have teeth.
Norma claims that the Organ Professionals knew, or should have known, the unsuitability of the donor’s liver prior in transplantation. Norma’s claims of common-law negligence and malpractice are unaffected by the limitations on liability contained in PASA, and thus survive a motion to dismiss.
ORDER
For the foregoing reasons, the defendants’ motion to dismiss is DENIED.

The court has chosen to include general, background facts and those specific to the motion at bar.

While PASA refers to §§1-14, the provisions specific to organ donation and guided by the federally promulgated UAGA are found in §§8-14.

G.L.c. 113, §1 governs the disposition of bodies of deceased persons; G.L.c. 113, §2 governs the disposition of bodies of veterans, strangers or travelers; G.L.c. 113, §3 governs identification of bodies of deceased persons; delivery of the body for burial; G.L.c. 113, §5 governs autopsies relative to unclaimed bodies of relatives and friends.

The SJC took this case on appeal and rendered a decision, Carey v. New England Organ Bank, SJC-09504 (March 15, 2006), which does not address the issues in the instant case.

PASA at G.L.c. 113, §8(e) contains this provision, “a gift of all or part of a body authorizes premortem tests, and any other examination necessary to assure medical acceptability of the gift for the purpose intended by the donor.”