Gants, Ralph D., J.
The background of this case is long and complicated but a greatly abbreviated version is sufficient for purposes of this motion. Frederick Fahey (“Fahey") is a real estate developer doing business through the development company, Premier Homes, Inc. (“Premier”). On November 15, 1998, Fahey executed a purchase and sale agreement to purchase 291 acres in Dracut which had been designated by the town for a golf course residential subdivision. Fahey formed the defendant Meadow Creek, LLC (“Meadow Creek”) to develop what he had hoped would include 180 residential house lots surrounding a championship 18-hole golf course, to be known as Meadow Creek.
By March 2001, however, Fahey was severely short of cash for the project, having already invested over $2.7 million of his own money but still needing additional permits for the project in order realistically to obtain conventional bank financing. At or around that time, while looking for bridge financing, he learned that David Allen (“Allen”), doing business under the trade name Really Financial Partners, controlled various limited partnerships which provided bridge loans to various real estate projects such as Meadow Creek. Ultimately, one of Allen’s limited partnerships, LR5-A Limited Partnership (“LR5-A”), lent millions of dollars to Meadow Creek at interest rates that exceeded the usury rate of 20 percent per year.
Under the Massachusetts criminal usury statute, G.L.c. 271, §49, LR5-A would have committed a crime by lending this money at a usurious loan unless it notified the Massachusetts Attorney General of its “intent to engage in [the] transaction” and maintained records of the transaction. G.L.c. 271, §49(d). There is no dispute that LR5-A provided prior notice to the Massachusetts Attorney General of its intent to engage in the initial $6.7 million bridge loan to Meadow Creek, but Fahey contends that notice is legally ineffective because it was filed with the Attorney General on May 8, 2001, even though LR5-A had not been organized as a Massachusetts limited partnership until May 18, 2001. Fahey also contends that subsequent notices filed with the Attorney General were equally ineffective because they were filed after the $6.7 million loan had already been funded. Consequently, as a result of these allegedly ineffective filings with the Attorney General, Fahey contends that LR5-A committed the crime of usuiy when it provided this $6.7 million loan at a usurious rate of interest.
The General Partner of LR5-A was LR5-A, Corp., whose president was Allen. One of the limited partners of LR5-A was another limited partnership established by Allen, known as Realty Financial Partners v. Limited Partnership (“RFP V”). Among the limited partners of RFP v. were various educational and charitable institutions, including the third-party defendants Harvard University, Yale University, Carnegie Corporation of New York, University of Notre Dame, Princeton University, Oberlin College, Spellman College Special Venture Fund, Inc., and the John D. and Catherine T. MacArthur Foundation (collectively, “the Limited Partners”). None of the Limited Partners had participated in any way in the allegedly usurious loans extended by LR5-A except that they provided the money that effectively financed the loans. Under the terms of the RFP v. Agreement of Limited Partnership, dated as of January 1,2001, each Limited Partner was required to make capital contributions (in amounts set forth in a schedule to the Agreement) through a number of payments, known as “drawdowns,” in amounts and at times determined by the General Partner. Agreement at §5.1(A). Failure to pay a drawdown was deemed a default under the Agreement, and carried severe financial consequences for the defaulting limited partner. Agreement at §5.3. These drawdowns, at least in substantial part, were the source of the funds that LR5-A lent to Meadow Creek. For purposes of this motion to dismiss, in which the Court must view the evidence in the light most favorable to the non-moving party (Meadow Creek), this Court will assume that the Limited Partners recognized that their drawdowns were being used to finance loans that would be deemed usurious in the absence of prior notification to the Attorney General.
It is undisputed that none of the Limited Partners notified the Attorney General of their intent to engage in what would otherwise be a usurious lending transaction with Meadow Creek. Meadow Creek contends that, by failing to do so, they violated the usury statute and thereby engaged in an unfair and deceptive act in *613 violation of G.L.c. 93A. The Limited Partners contend that, as a matter of law, as limited partners of a limited partnership that itself was a limited partner to LR5-A, they had no obligation to provide notice to the Attorney General of LR5-A’s loan to Meadow Creek. As a result, the Limited Partners now move to dismiss the Chapter 93A claim against them in the third-party complaint. In addition, the Limited Partners also move to dismiss the only other claim against them in the third-party complaint, seeking a constructive trust, contending that no such trust may be imposed against them in the absence of a finding of wrongdoing by them. After hearing, the Limited Partners’ motion to dismiss the Chapter 93A claim against them is ALLOWED, and the motion to dismiss the constructive trust claim against them is DENIED.
DISCUSSION
When evaluating the sufficiency of a third-party complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the factual allegations of the complaint and all reasonable inferences favorable to the third-party plaintiffs which can be drawn from those allegations. Fairneny v. Savogran, 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The issue is whether the facts alleged, generously construed in favor of the third-party plaintiffs, state a valid legal claim that would warrant relief on any theory of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979) (“[A] complaint is not súbject to dismissal if it would support relief on any theory of law”).
The Chapter 93A Claim Premised on a Violation of the Usury Statute
This case presents the Court with a conflict between the requirements of the usury statute, G.L.c. 271, §49, and the protections afforded to limited partners pursuant to G.L.c. 109, §19. To resolve this conflict, this Court must first carefully examine the provisions of each statute in an attempt to find an interpretation that effectuates the purposes of both. See Commonwealth v. Super, 431 Mass. 492, 498 (2000) (“[W]here possible, we interpret statutes so as to ‘reasonably effect! ] the purposes of both statutes,’ “ quoting Crocker v. Martha’s Vineyard Comm’n, 407 Mass. 77, 82 (1990)).
The usury statute in subsection (a) provides:
Whoever in exchange for either a loan of money or other property knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds [twenty percent per year] upon the sum loaned, or the equivalent rate for a longer or shorter period, shall be guilty of criminal usuiy and shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than [$10,000] or by both . . .
G.L.c. 271, §49(a). If one stopped at subsection (a), one would view the usuiy statute as a rather traditional criminal statute barring usurious loans, with rather severe potential penalties. However, if one read on to subsection (d), one would see that the usuiy statute punishes only unreported usuiy, because that subsection provides in pertinent part:
The provisions of paragraph (a) . . . shall not apply to any person who notifies the attorney general of his intent to engage in a transaction or transaction which, but for the provisions of this paragraph, would be proscribed under the provisions of paragraph (a) providing any such person maintains records of any such transaction . . . Such records shall contain the name and address of the borrower, the amount borrowed, the interest and expenses to be paid by the borrower, the date the loan is made and the date or dates on which any payment is due. Any such records shall be made available to the attorney general for the purposes of inspection upon his request. . .
G.L.c. 271, §49(d). In effect, if one makes a usurious loan but notifies the Attorney General that he intends to make such a loan and keeps records of the loan that may be inspected upon request by the Attorney General, one has not committed a crime.
Under G.L.c. 109, §19 of the Uniform Limited Partnership Act (“the Act”), a limited partner is not liable for the obligations of a limited partnership “unless he is also a general partner or, in addition to the exercise of his rights and powers as a limited partner, he participates in the control of the business . . .” G.L.c. 109, §19(a). The Act specifically identifies certain conduct that a limited partner may engage in without risking being found to have participated in the control of the business, such as consulting with or advising the general partner regarding the business. G.L.c. 109, §19(b)(2). Proposing, approving, or disapproving of loans or other investments made by the limited partnership in the ordinary course of its business is not within this “safe harbor” of conduct. See G.L.c. 109, §19(b). The mere fact that conduct is not expressly within the safe harbor does not mean that it necessarily will constitute participation in the control of the business, and thereby cost the limited partner his limited liability if he engages in such conduct. G.L.c. 109, §19(c)(2). Yet, it certainly poses that risk. The RFP v. Agreement of Limited Partnership plainly sought to avoid that risk by expressly providing that a Limited Partner may consult with or advise the General Partner but shall not “participate in or have any control over the Partnership business or have any authority or right to act for or bind the Partnership, except as required by law.” Agreement at §6.4. In short, under the Agreement, the General Partner decides which loans to make and the terms of those loans, perhaps with the advice of the Limited Partners, and the Limited Partners must make the capital con *614 tributions needed to fund those loans. Stated even more bluntly, the Limited Partners fund these loans; they do not make them or control them.
Meadow Creek argues that the usury statute is broadly written to include limited partners within its scope, because it criminalizes the receipt of usurious interest, whether “directly or indirectly,” and limited partners, having provided the funds used to make the usurious loans, indirectly receive the usurious interest through their returns upon their investment. Under this interpretation, if a limited partnership were to make a usurious loan, all general and limited partners would be guilty of a crime unless they notified the Attorney General of their intent to engage in the usurious transaction. Similarly, if a corporation were to make such a loan, all shareholders would be guilty of a crime unless they, too, gave prior notice to the Attorney General. Meadow Creek’s interpretation of the usury statute, however, is so inconsistent with the letter and spirit of the notification provision as to be demonstrably overbroad.
Under Meadow Creek’s interpretation, even if the limited partnership or corporation themselves were not guilty of a crime because they had given the required prior notice of the usurious loan to the Attorney General, the limited partners and shareholders would be guilty if they separately failed to provide such a notice. However, it would be difficult for them to do so, since they do not participate in the control of the business and therefore may not even have prior notice of the transaction themselves. Even if they did know of it, and knew that its terms would be usurious, and gave prior notice to the Attorney General, they would still run afoul of the usuiy statute because they do not themselves maintain records regarding the transaction, which is a separate requirement under G.L.c. 271, §49(d). Therefore, under Meadow Creek’s interpretation, the limited partnership and corporation need not fear criminal liability if they provided the Attorney General with the required prior notice of the usurious loan, but their limited partners and shareholders would still be at risk.
If limited partners and shareholders sought to avoid this risk by themselves notifying the Attorney General of their intent to engage in a usurious transaction, it would create havoc for the Attorney General, who would now have multiple entities and persons providing prior notice of their intent to engage in the very same usurious loan. If Meadow Creek’s interpretation were to prevail, the Attorney General may receive dozens, perhaps hundreds, of notices regarding a single usurious loan and would have to figure out that all these notices involved the same loan. The purpose of the usury statute is to allow the Attorney General to monitor the issuance of usurious loans, and that purpose can be as frustrated by too much information as by too little.
Consequently, this Court finds that Meadow Creek’s interpretation of the usury statute is inconsistent not only with the Uniform Limited Partnership Act but also with the purpose of the usury statute itself. If a limited partnership issues a usurious loan, that loan does not violate the usury statute if the lender (the general partner acting on behalf of the limited partnership) has provided prior notice to the Attorney General of its intent to engage in the transaction and makes the records of this transaction available for the Attorney General’s review. Limited partners, since they are neither the lender nor control the lender, do not commit criminal usury by failing themselves to give prior notice of the loan to the Attorney General. Since Meadow Creek’s Chapter 93A claim against the Limited Partners in the third-party complaint rests solely upon their failure to provide such prior notice, the Limited Partners’ motion to dismiss that claim is allowed.
The Constructive Trust
Meadow Creek argues that if it prevails in its suit against LR5-A, it might be unable to recover upon its judgment if LR5-A has distributed all of its investment proceeds to its Limited Partners and strips to an empty shell. It contends that it would be fundamentally unfair to allow LR5-A to become effectively judgment-proof and deny Meadow Creek the opportunity to recover upon its judgment from the Limited Partners who enjoyed the financial fruits of LR5-A’s unfair conduct. The Limited Partners contend that no constructive trust can be imposed upon them in the absence of wrongdoing, and that they engaged in no wrongdoing since they were simply passive investors who did not participate in the control of the business.
This Court rejects the Limited Partners’ argument that a constructive trust must be premised on a finding of wrongdoing by them. The Appeals Court has recognized that “(t]here are . . . circumstances under which the innocent recipient of money, or goods the money bought, may be required to make restitution to the person from whom the money was wrongfully obtained.” Jensen v. Daniels, 57 Mass.App.Ct. 811, 818 (2003). If, as alleged, the Limited Partners enjoyed the financial fruits of an investment that profited from the unfair and deceptive acts of the General Partner of LR5-A, and if LR5-A has distributed all its investment earnings and been left an empty shell, equity may demand that the profits derived by the Limited Partners from that investment be made available to the plaintiffs to pay that judgment. “A constructive trust is a flexible tool of equity designed to prevent unjust enrichment resulting from fraud, a violation of a fidu-ciaiy duty or confidential relationship, mistake or ‘other circumstances’ in which a recipient’s acquisition of legal title amounts to an unjust enrichment.” Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 246-47, citing Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 789 (1994) (addi *615 tional citations omitted). If the allegations in the third-party complaint are true, which this Court must accept for purposes of this motion to dismiss, the Limited Partners acquired property (i.e. investment returns) through the fraudulent or deceptive conduct of the General Partner of LR5-A, and would be unjustly enriched if LR5-A did not compensate Meadow Creek for the losses arising from that alleged misconduct.
Therefore, the Limited Partners’ motion to dismiss the constructive trust claim is denied.
Since the constructive trust claim is equitable in nature and is contingent upon LR5-A being unable to pay the full amount of the judgment, this Court will not permit Meadow Creek to treat the Limited Partners as parties for purposes of discovery until this contingency is triggered. Moreover, even if it is triggered, this Court emphasizes that the constructive trust would be limited in amount to the distributions obtained by the Limited Partners from the LR5-A investments found to have been tainted by the General Partner’s wrongdoing.
ORDER
For the reasons state above, this Court ORDERS that:
1. The Limited Partners’ motion to dismiss the Chapter 93A third-party claim against them is ALLOWED.
2. The Limited Partners’ motion to dismiss the constructive trust third-party claim is DENIED. However, since the constructive trust claim is equitable in nature and is contingent upon LR5-A being unable to pay the full amount of the judgment, this Court will not permit Meadow Creek to treat the Limited Partners as parties for purposes of discoveiy until this contingency is triggered. Moreover, even if it is triggered, this Court emphasizes that the constructive trust would be limited in amount to the distributions obtained by the Limited Partners from the LR5-A investments found to have been tainted by the General Partner’s wrongdoing.