Angela M. CHIARA, et al., Plaintiffs,

v.

Mayor Dennis DIZOGLIO,
et al., Defendants.

No. CIV. A. 99–10459–REK.

United States District Court,
D. Massachusetts.

July 26, 1999.

Angela M. Chiara, Methuen, MA, Pro se.

Matthew A. Chiara, Methuen, MA, Pro se.

Patrick J. Costello, Merrick, Louison & Costello, Boston, MA, for Defendants.

**Memorandum and Order**

KEETON, District Judge.

## I.

Pending now before the court are the following motions:

(1) Motion of the Defendant, Pasquelina Napolitano for a More Definite Statement (Docket No. 15, filed June 10, 1999);

(2) Motion for Court Approval of First Amended Complaint (Docket No. 17, filed June 18, 1999);

(3) Motion of the Defendant, Pasquelina Napolitano for More Definite Statement as to the First Amended Complaint (Docket No. 18, filed June 28, 1999); and

(4) Plaintiffs' Motion for Preliminary Injunction, with Brief in Support (Docket Nos. 19 and 20, respectively, filed June 30, 1999). Also bearing on this motion are: Opposition of Defendants Mayor Dennis DiZoglio, City Solicitor Maurice J. Lariviere, Jr., Eugene O'Neil, 1997–1998 Economic Development Director, Methuen Conservation Inspector, Methuen Conservation Commission, Community Development Director, Community Development Board and City Councilor William Manzi to Plaintiffs' Motion for Preliminary Injunction (Docket No. 23, filed July 16, 1999); Opposition of the Defendant, Pasquelina Napolitano to Plaintiff's Motion for a Preliminary Injunction (Docket No.33, filed July 20, 1999); and Opposition of Defendant Victor L. Hatem, Esq. to Plaintiffs' Motion for Preliminary Injunction (Docket No. 37, filed July 23, 1999).

## II.

Plaintiff Angela Chiara, d/b/a the Art Trust Development Company ("ATDC"), owns a parcel of land on Ranger Road in Methuen ("Lot 23"), at all relevant times zoned for single family residences. In October 1995, the ATDC filed a Notice of Intent with the Methuen Conservation Commission seeking an Order of Conditions for the construction of a roadway and utilities to service a residential subdivision on Lot 23. The Conservation Commission denied the request for failure to provide requested information and the Commission's resulting inability to determine the impacts of the proposal.

The ATDC sought to overturn the Conservation Commission's denial by filing a Request for a Superceding Order with the Commonwealth of Massachusetts Department of Environmental Protection ("DEP"). On January 29, 1997, the DEP determined that the Conservation Commission's actions were justified due to the lack of required information, and due to other wetland protection criteria not previously cited by the Conservation Commission. The ATDC filed a Request for an Adjudicatory Hearing under 310 CMR 1.01(6).

On July 7, 1997, the Conservation Commission amended its denial of the request for an Order of Conditions, incorporating the additional environmental issues raised by the DEP. Matthew Chiara, on behalf of the ATDC, then decided not to pursue the plan to subdivide the land into single family houses, instead opting to develop a senior citizen housing facility, in the hopes that it would have less environmental impact. In light of Chiara's decision not to pursue his original plan, the Administrative Law Judge dismissed as moot the ATDC's appeal.

After the denial of the Conservation Commission and the DEP, but before the Final Decision of the ALJ, Chiara deter-

mined that a change in site zoning would be essential for the proposed multi-unit senior citizen housing. Over the course of the next few months Chiara advocated zoning changes. Public hearings were convened in April and May of 1997 in order to review a proposed zoning amendment. During 1997 and 1998, Chiara continued to seek public support for his proposed senior citizen housing project. Chiara was notified by the Conservation Commission that the same environmental issues would need to be addressed for this project.

In April of 1998 Chiara withdrew the request for a zoning change because he did not think he could get a favorable recommendation from the Community Development Board, and he knew that the Town Council would be hesitant to adopt the requested zoning change without that favorable recommendation.

In June of 1998 it became clear that Chiara's pending Notice of Intent (with respect to the senior housing project) would not move to the formal hearings stage until Chiara was legally in a position to obtain all zoning approvals and other permits necessary to proceed with the project. Thus, until the ATDC obtained a zoning change for Lot 23, Chiara could not proceed with the multi-residential unit senior housing project. Chiara formally withdrew his Application for a Notice of Intent.

The Notice of Intent was thereafter refiled and on August 21, 1998, it was rejected by the Conservation Commission because Lot 23 was not zoned for multi-family housing. The Commission stated that a public hearing regarding the zoning amendment was being arranged for September 1998. Chiara appealed this denial and asked that the zoning hearing be postponed until after the DEP reviewed the appeal. The DEP concurred with the action taken by the Conservation Commission, stating that without the proper zoning and required permits the Notice of Intent was premature. Chiara filed a Request for Adjudicatory Hearing with the DEP on October 2, 1998.

In January 1999, the Town Council and Community Development Board conducted a public hearing on the proposed zoning amendment. Subsequently, the Community Development Board submitted a unanimous, unfavorable recommendation relative to the zoning change. The Community Development Board gave many reasons for its unfavorable recommendation, among them the proposed number of units, the lack of adequate parking areas, and the potential conflicts with existing Methuen plans for community development.

On February 16, 1999, the Town Council voted against the zoning change. On April 16, 1999, the DEP issued its Final Decision with respect to the August 21, 1998 rejection of the Notice of Intent, dismissing the appeal as moot, and sustaining the denial of Chiara's superceding order request due to the inability to comply with local zoning requirements and with the wetlands environmental regulations.

On March 2, 1999, plaintiffs filed a civil action alleging that defendants' actions discriminated against persons with handicaps in violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq. and the ADA Rehabilitation Act, § 504. Plaintiffs also alleged that defendants acted in concert to block the proposed senior living facility, and that defendants failed to make a reasonable accommodation to allow the construction of the facility. Plaintiffs now seek a preliminary injunction, including mandatory and prohibitive provisions as follows:

1. Direct the Defendants, the Conservation Commission of the City of Methuen, their agents, employees and all other persons in active concert with them be ordered to accept the filing by the Plaintiffs the same Notice of Intent which the Plaintiffs had previously filed with the Methuen Conservation Commission on or about August 20, 1998; that the Methuen Conservation Commission conduct a public hearing promptly

**196**

thereafter, all in accordance with the statutes of the Commonwealth of Massachusetts.

2. Enjoin each and every one of the Defendants, their agents, employees and all other persons in active concert or participation with them from interfering with the development, construction and operation of the assisted living residence proposed by the Plaintiffs.

3. Enjoin each and every one of the Defendants, their agents, employees and all other persons active in concert or participation with them to make reasonable accommodations in the City's wetlands ordinances, rules and regulations, in order to accommodate the handicapped residents who will be living in the proposed assisted living residence, in compliance with the provisions of Federal Fair Housing Amendment Act of 1988, 42 U.S.C. sect. 3601, et seq.

*See* Plaintiffs' Motion for Preliminary Injunction, Docket No. 19.

### III.

█ In order to obtain a preliminary injunction, the plaintiffs have the burden of satisfying four factors: (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is not granted; (3) the harm outweighs any hardship that would be inflicted on the defendant by an injunction; and (4) public interest will not be adversely affected by the injunction. *See Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981).

█ Ordinarily the purpose of a preliminary injunction is to preserve the status quo so that upon full adjudication on the merits the district court can more effectively remedy any discerned wrongs. *See CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 620 (1st Cir. 1995). The Court of Appeals for the First Circuit has cautioned that a preliminary injunction that has the effect of disturbing, rather than preserving, the status quo "normally should be granted only in those

circumstances when the exigencies of the situation demand such relief." *Massachusetts Coalition of Citizens with Disabilities v. Civil Defense Agency*, 649 F.2d 71, 76 n. 7 (1st Cir.1981).

In this case, plaintiffs' have been denied an Application for a Notice of Intent for failure to procure the necessary permits and approvals. The motion for preliminary injunction asks the court to require the Conservation Commission to accept the Notice of Intent, and to require a public hearing on the Notice of Intent. The plaintiffs further ask that defendants be restrained from interfering with the development, construction and operation of the proposed senior housing project. This second request is squarely in conflict with the first request because the proposed order would be a mandatory order that the Conservation Commission allow the plaintiffs to proceed with the project.

Plaintiffs also request that defendants be required to make "reasonable accommodations" in the environmental ordinances in order to accommodate the "handicapped residents" of the proposed facility. This, too, would be a mandatory form of relief that disabled defendants from performing discretionary obligations imposed upon them by law.

These actions, if taken by the court, would not only require that positive action be taken by the defendants, thereby disrupting the status quo, but would also have the effect of granting total relief in a way that would make trial on the merits a futile exercise because consequences of the "preliminary" relief could not be undone. Plaintiffs would be free to construct the proposed facility, a very significant, and potentially irreversible, alteration without regard for compliance with conditions imposed by law. This kind of action should not be taken except in extreme circumstances involving rights so fundamental that they entirely override the law establishing the conditions plaintiffs seek to have the court disregard.

In these circumstances, plaintiffs have failed to carry their burden on any of the factors of the preliminary injunction test.

First, it is not at all clear from plaintiffs' submissions that this proposed multi-unit assisted living residence would in fact be housing handicapped persons. Plaintiffs are inconsistent in the terminology they use to describe the persons they intend to allow to reside in the facility. In some instances, they refer to the group as "the frail elderly" and in other instances they refer to them as "handicapped." The mere fact that a person is elderly does not constitute a handicap. Adding "frail" to "elderly" does not accomplish the goal of describing a "handicapped person" in any relevant legal sense. Being "frail" can come about in many different ways.

Even, however, if I assume, without deciding, that plaintiffs have somehow moved over or around the hurdle of identifying persons who are "handicapped" as defined by the relevant statutes, plaintiffs have failed to show a likelihood of success on the merits of their claims. Plaintiffs have asserted claims under the FHA and the ADA, statutes that prohibit all disability-based discrimination by a public entity or recipient of federal financial assistance, and require that reasonable accommodations necessary for handicapped individuals to benefit from, or participate in, programs run by those entities be made. Plaintiffs do not demonstrate either that defendants acted with purpose of disability-based discrimination or that defendants' actions have had or will have a disparate impact on handicapped residents.

I consider, first, plaintiffs' claim of purposeful discrimination. Plaintiffs state that defendants' denial of the Notice of Intent hearing after publicly discussing the environmental implications of the proposed facility was designed to create a biased debate concerning the possible zoning change. Plaintiffs also contend that defendants "desire[d] to inflame the public hearing with the misconception that the site

was a threat to the abutters because of chronic water problems." Docket No. 20 at 24. Plaintiffs offer no support for these, and other, sweeping conclusions concerning defendants' intent. None of the statements that plaintiffs attribute to some defendant, nor all of them together, would support a finding of intentional discrimination against handicapped persons.

Similarly, plaintiffs do not demonstrate that defendants' actions had a disparate impact on handicapped residents that would be actionable under the FHA even without discriminatory intent. Plaintiffs assert that this type of facility is needed in the community due to the large percentage of elderly citizens, and plaintiffs state that the building complies with state requirements for this type of facility. These factual assertions, even if assumed to be true, do not meet the requirements for an actionable disparate impact under the test set forth in *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977), and no other reasons exist to find that the defendants' actions create an actionable disparate impact on handicapped persons.

Plaintiffs finally argue, although somewhat vaguely, that defendants' should be required to make accommodations that would except this assisted living facility from having to comply with the state environmental regulations because the facility would be useful to the community and would help handicapped persons. This argument misses the target. It fails to take adequate account of the fact that a United States district court is not authorized to hold that a policy argument such as this overrides all law bearing upon the authority and obligations of the defendants. Under applicable law, defendants are required to approve accommodations that will allow handicapped persons an opportunity to use and enjoy a dwelling as equals among those not handicapped. Defendants are not required to provide more

than equal opportunity or more than reasonable accommodation.

The environmental regulations invoked by plaintiffs in this case were not developed and are not to be implemented or enforced to make the proposed facility solely or even primarily one to house handicapped persons. The Conservation Commission permissibly raised the issue of the environmental impact of a facility on Lot 23 with respect to the original proposal for single family residences. The environmental issue was raised without regard to the type of person that would reside in the proposed units, and without regard to the type of unit being proposed. Thus, the state environmental regulations have been reasonably applied.

█ Plaintiffs have also failed to demonstrate irreparable harm in the event that this injunction is not issued. The fact that no such facility exists at this time is not sufficient to establish that "the handicapped residents who will reside at the Assisted Living Residence, and the owner of the proposed Residence have suffered and will continue to suffer irreparable injury" due to the actions of defendants. Docket No. 20 at 33. This is a conclusion of the plaintiffs asserted without supporting proof. Also, to be "irreparable" injury must ordinarily be something not capable of being remedied by a monetary award. Plaintiffs have not proffered any admissible evidence tending to show injury caused by defendants' actions that could not be remedied monetarily in the future.

█ Furthermore, it is apparent that the hardship to the defendants if this injunction is granted would greatly outweigh any hardship to plaintiffs if the injunction is not granted. Defendants would be forced to allow the construction of a dwelling on a lot not zoned for that type of dwelling, and the construction of that dwelling would be likely to cause severe environmental repercussions. The time and costs involved in "undoing" that kind of circumstance, if indeed it would be possible at all, heavily outweigh any harm that plaintiffs might incur in waiting for a trial on the merits of these matters.

█ Finally, if indeed the proposed facility would have an impact on the wetlands and potentially the environment of the rest of the community, it would be against the public interest to allow this type of construction to go forward without a hearing on the merits to determine its appropriateness.

Plaintiffs have failed to carry their burden to demonstrate any of the four elements relevant to deciding whether to grant a preliminary injunction. Plaintiffs' Motion for Preliminary Injunction will be DENIED.

## IV.

Plaintiffs move to amend the complaint under Federal Rule of Civil Procedure 15(a). Rule 15(a) requires that leave to amend be given freely in the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive, or undue prejudice to the opposing party. In this case the motion to amend is unopposed and I see no reason to deny it. Plaintiffs' Motion for Court Approval of the filing of the First Amended Complaint will be ALLOWED.

## V.

Defendant Pasquelina Napolitano has moved this court for a more definite statement of both the original complaint and the first amended complaint. The motion for a more definite statement with respect to the original complaint is dismissed as moot in view of Section IV of this Memorandum. The motion for a more definite statement of the first amended complaint will be allowed because the complaint, even as amended, is vague and ambiguous as to the allegations against Napolitano.

## ORDER

For the foregoing reasons, it is ORDERED:

(1) Motion of the Defendant, Pasquelina Napolitano for a More Definite Statement (Docket No. 15, filed June 10, 1999) is DISMISSED AS MOOT;

(2) Motion for Court Approval of the filing of the First Amended Complaint (Docket No. 17, filed June 18, 1999) is ALLOWED;

(3) Motion of the Defendant, Pasquelina Napolitano for More Definite Statement as to the First Amended Complaint (Docket No. 18, filed June 28, 1999) is ALLOWED; and

(4) Plaintiffs' Motion for Preliminary Injunction (Docket No. 19, filed June 30, 1999) is DENIED.