Angela M. CHIARA, d/b/a Art Trust, Matthew A. Chiara, Senior Independent Living Associates, Inc., Mary Smith and John Smith, Plaintiffs,

v.

Mayor Dennis DIZOGLIO, City Solicitor Maurice Lariviere, Jr., Eugene O'Neill, Economic Development Director, Methuen Conservation Inspector, Methuen Conservation Commission, Community Development Board, City Councilor William Manzi, Pasquelina Napolitano, Victor Hatem, and Brian Sheehy, Defendants.

No. Civ.A. 99–10459–REK.

United States District Court, D. Massachusetts.

Jan. 11, 2000.

Angela M. Chiara, Methuen, MA, Pro se.

Domenic S. Terranova, Andover, MA, for Plaintiff.

Matthew A. Chiara, Methuen, MA, Pro se.

Patrick J. Costello, Merrick, Louison & Costello, Boston, MA, William J. Mason, Law Office of Anthony R. DeFruscia, Lawrence, MA, John E. Mahoney, Hatem and Mahoney, LLP, North Andover, MA, Kenneth A. Cossingham, Cossingham Law Office, North Andover, MA, Lesley H. Kuhl, Crossingham Law Office, North Andover, MA, for Defendants.

**Opinion**

KEETON, District Judge.

## I.

Pending for disposition after hearings of record and full briefings are several motions to dismiss. Each defendant has a pending motion to dismiss. In some instances, the name of a defendant as stated in the motion to dismiss is not exactly the same as that stated in the caption of the case above. The differences, however, are not material.

The following are the pending motions and submissions bearing upon them:

(1) Motion of Defendant Victor L. Hatem to Dismiss (Docket No. 44, filed September 21, 1999), opposed by Docket No. 49 (filed September 30, 1999), with affidavits (Docket Nos. 50, 51);

(2) Motion of Mayor Dennis DiZoglio, Maurice J. Lariviere Jr., Eugene O'Neil, Methuen Inspector, Methuen Commission, Community Director, Community Board, William Manzi to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) (Docket No. 47, filed September 27, 1999), with Memorandum in Support of Motion to Dismiss (Docket No. 48, filed September 27, 1999);

(3) Motion of Defendant Pasquelina Napolitano to Dismiss (Docket No. 53, filed October 6, 1999), with Memorandum in Support (not separately docketed);

(4) Defendant Brian Sheehy's Motion to Dismiss Plaintiffs' Complaints on the Basis of Defective and Insufficient Service of Process (Docket No. 58, filed October 15, 1999), with affidavits (Docket Nos. 57, 59);

(5) Plaintiffs' Motion to Further Enlarge Time for Filing Opposition Material to Motions Filed by the Municipal Defendants and Defendant Paqualina Napolitano (Docket No. 67, filed November 4, 1999).

## II. Background

### A. Factual Background

Parts of the factual background set forth more fully in the court's Memorandum and Order of July 26, 1999, *Chiara v. Dizoglio*, 59 F.Supp.2d 193 (D.Mass.1999), are summarized here and supplemented in respects first disclosed or emphasized in more recent submissions of the parties.

Plaintiff Angela Chiara, d/b/a the Art Trust Development Company ("ATDC"), owns a parcel of land on Ranger Road in Methuen ("Lot 23"), at all relevant times zoned for single family residences. In October 1995, the ATDC filed a Notice of Intent with the Methuen Conservation Commission seeking an Order of Conditions for the construction of a roadway and utilities to service a residential subdivision on Lot 23. The Conservation Commission denied the request for failure to provide requested information and the Commission's resulting inability to determine the impacts of the proposal.

The ATDC sought to overturn the Conservation Commission's denial by filing a Request for a Superceding Order with the Commonwealth of Massachusetts Department of Environmental Protection ("DEP"). On January 29, 1997, the DEP determined that the Conservation Commission's actions were justified due to the lack of required information, and due to other wetland protection criteria not previously cited by the Conservation Commission. The ATDC filed a Request for an Adjudicatory Hearing under 310 CMR 1.01(6).

On July 7, 1997, the Conservation Commission amended its denial of the request for an Order of Conditions, incorporating the additional environmental issues raised by the DEP. Matthew Chiara, on behalf of the ATDC, then decided not to pursue the plan to subdivide the land into single family houses, instead opting to develop a senior citizen housing facility, in the hopes that it would have less environmental impact. In light of Chiara's decision not to pursue his original plan, the Administrative Law Judge ("ALJ") dismissed as moot the ATDC's appeal.

After the denials by the Conservation Commission and the DEP, but before the Final Decision of the ALJ, Chiara determined that a change in site zoning would be essential for the proposed multi-unit senior citizen housing. Over the course of the next few months Chiara advocated zoning changes. Public hearings were convened in April and May of 1997 in order to review a proposed zoning amendment. During 1997 and 1998, Chiara continued to seek public support for his proposed senior citizen housing project. The Conservation Commission notified Chiara that the same environmental issues would need to be addressed for this project.

In April of 1998 Chiara withdrew the request for a zoning change because he did not think he could get a favorable recommendation from the Community Development Board, and he knew that the Town Council would be hesitant to adopt the requested zoning change without that favorable recommendation.

In June of 1998 it became clear that Chiara's pending Notice of Intent (with respect to the senior housing project) would not move to the formal hearings stage until Chiara was legally in a position to obtain all zoning approvals and other permits necessary to proceed with the project. Thus, until the ATDC obtained a zoning change for Lot 23, Chiara could not proceed with the multi-residential unit senior housing project. Chiara formally withdrew his Application for a Notice of Intent.

Thereafter Chiara re-filed a Notice of Intent and on August 20, 1998, after public notice, the Conservation Commission held a public hearing. In that hearing it voted unanimously not to hear the Notice of Intent. The Commission restated its position that until Lot 23 was zoned for multifamily housing, the Notice of Intent would not be heard. Chiara, treating this as a denial of his Notice of Intent, appealed to

the DEP. The DEP concurred with the action taken by the Conservation Commission, stating that without the proper zoning and required permits the Notice of Intent was premature.

On October 2, 1998, Chiara filed a Request for Adjudicatory Hearing with the DEP.

In January 1999, the Town Council and Community Development Board conducted a public hearing on the proposed zoning amendment. Subsequently, the Community Development Board submitted a unanimous, unfavorable recommendation relative to the zoning change. The Community Development Board gave many reasons for its unfavorable recommendation. Among them were the proposed number of units, the lack of adequate parking areas, and the potential conflicts with existing Methuen plans for community development.

On February 16, 1999, the Town Council voted against the zoning change.

On April 16, 1999, the DEP issued its Final Decision with respect to the August 21, 1998 rejection of the Notice of Intent. The DEP dismissed the appeal as moot, and left in effect the denial of Chiara's request for a superceding order in view of the inability to comply with local zoning requirements and with the wetlands environmental regulations.

### B. History of Proceedings in this Court

On March 2, 1999, plaintiffs filed a civil action alleging that defendants' actions discriminated against persons with handicaps in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and the ADA Rehabilitation Act, § 504. Plaintiffs also alleged that defendants acted in concert to block the proposed senior living facility, and that defendants failed to make a reasonable accommodation to allow the construction of the facility. Plaintiffs sought a preliminary injunction, including mandatory and prohibitive provisions as follows:

1. Direct the Defendants, the Conservation Commission of the City of Methuen, their agents, employees and all other persons in active concert with them be ordered to accept the filing by the Plaintiffs the same Notice of Intent which the Plaintiffs had previously filed with the Methuen Conservation Commission on or about August 20, 1998; that the Methuen Conservation Commission conduct a public hearing promptly thereafter, all in accordance with the statutes of the Commonwealth of Massachusetts.

2. Enjoin each and every one of the Defendants, their agents, employees and all other persons in active concert or participation with them from interfering with the development, construction and operation of the assisted living residence proposed by the Plaintiffs.

3. Enjoin each and every one of the Defendants, their agents, employees and all other persons active in concert or participation with them to make reasonable accommodations in the City's wetlands ordinances, rules and regulations, in order to accommodate the handicapped residents who will be living in the proposed assisted living residence, in compliance with the provisions of Federal Fair Housing Amendment Act of 1988, 42 U.S.C. § 3601, et seq.

*See* Plaintiffs' Motion for Preliminary Injunction, Docket No. 19.

Plaintiffs' Motion for Preliminary Injunction was denied, after hearing, for the reasons explained in the Memorandum and Order of July 26, 1999. I state again, here, the reasons for denial of preliminary injunction that also have a bearing on motions now pending.

In this case, plaintiffs' complain of the denial, for failure to procure the necessary permits and approvals, of their Application for a Notice of Intent. Plaintiffs initially asked the court to require the Conservation Commission to accept the Notice of Intent, and to require a public hearing on

the Notice of Intent. The plaintiffs further asked that defendants be restrained from interfering with the development, construction and operation of the proposed senior housing project. This second request was squarely in conflict with one part of the first request (to require a public hearing) because the proposed order would be a mandatory order that the Conservation Commission allow the plaintiffs to proceed with the project (without a public hearing).

Plaintiffs also requested, then and now, that defendants be required to make "reasonable accommodations" in the environmental ordinances in order to accommodate the "handicapped residents" of the proposed facility. This, too, would be a mandatory form of relief that would disable defendants from performing discretionary obligations imposed upon them by law.

### III. Plaintiffs' Failure to Satisfy Their Burden of Showing a Trial–Worthy, Legal–Factual Claim

In view of the circumstances as described in the foregoing Section II, plaintiffs not only failed to carry their burden of showing grounds for preliminary equitable relief, but in light of the standard to be applied when considering a motion to dismiss for failure to state a claim, plaintiffs also fail now to respond to defendants motions for final disposition by a showing that they have one or more trialworthy legal-factual claims. *See, e.g., Aybar v. Crispin–Reyes*, 118 F.3d 10, 13 (1st Cir. 1997) (stating that a court determines whether a complaint survives a motion to dismiss under Fed.R.Civ.P. 12(b)(6) by accepting all well-pleaded factual assertions and drawing all reasonable inferences from those assertions in plaintiff's favor, and determining on that basis whether anything remains for trial.)

■ First, it is not at all clear from plaintiffs' submissions that this proposed multi-unit assisted living residence would in fact be housing handicapped persons.

Plaintiffs are inconsistent in the terminology they use to describe the persons they intend to allow to reside in the facility. In some instances, they refer to the group as "the frail elderly" and in other instances they refer to them as "handicapped." The mere fact that a person is elderly does not constitute a handicap. Adding "frail" to "elderly" does not accomplish the goal of describing a "handicapped person" in any relevant legal sense. Being "frail" can come about in many different ways.

Even, however, if I assume, without deciding, that plaintiffs have somehow moved over or around the hurdle of identifying persons who are "handicapped" as defined by the relevant statutes, plaintiffs have failed to show a trialworthy legal-factual claim.

Plaintiffs have asserted claims under the FHA and the ADA, statutes that prohibit all disability-based discrimination by a public entity or recipient of federal financial assistance, and require that defendant entities make reasonable accommodations necessary for handicapped individuals to benefit from, or participate in, programs run by those entities. Plaintiffs do not demonstrate a trialworthy issue on either their contention that defendants acted with purpose of disability-based discrimination or their contention that defendants' actions have had or will have a disparate impact on handicapped residents.

■ I consider, first, plaintiffs' claim of purposeful discrimination. Plaintiffs state that defendants' denial of the Notice of Intent hearing, after publicly discussing the environmental implications of the proposed facility, was designed to create a biased debate concerning the possible zoning change. Plaintiffs also contend that defendants "desire[d] to inflame the public hearing with the misconception that the site was a threat to the abutters because of chronic water problems," Docket No. 20 at 24, and that "the meeting clearly demonstrated the unfairness of the hearing with the hysteria of chronic flooding and no emphasis on the debate of the urgent need

of Assisted Living in this mixed use residential area." Docket No. 42 at ¶ 107. Plaintiffs offer no viable legal theory and no factual support for these, and other, sweeping conclusions concerning defendants' intent. None of the statements that plaintiffs attribute to some defendant, nor all of them together, would support a finding of intentional discrimination against handicapped persons.

■ Similarly, plaintiffs do not demonstrate that defendants' actions had a disparate impact on handicapped residents that would be actionable under the FHA even without discriminatory intent. Plaintiffs assert that this type of facility is needed in the community due to the large percentage of elderly citizens, and plaintiffs state that the building complies with state requirements for this type of facility. These factual assertions, even if assumed to be true, do not meet the requirements for an actionable disparate impact under the test set forth in *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977), and no other reasons exist to find that the defendants' actions create an actionable disparate impact on handicapped persons. *See id.* at 1290–91 (discerning the following four critical factors from the relevant case law that would aid in a determination of actionable discriminatory impact: "(1) how strong is the plaintiff's showing of discriminatory effect; (2) is there some evidence of discriminatory intent, though not enough to satisfy the constitutional standard of *Washington v. Davis;* (3) what is the defendant's interest in taking the action complained of; and (4) does the plaintiff seek to compel the defendant to [take] affirmative[ ] [steps to] provide housing for members of minority groups or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing").

■ Plaintiffs also have argued, both in relation to preliminary injunction and again in opposing dispositive motions, that

defendants should be required to make accommodations that would except this assisted living facility from having to comply with the state environmental regulations because the facility would be useful to the community and would help handicapped persons. This argument misses the target. It fails to take adequate account of the fact that a United States district court is not authorized to hold that a policy argument such as this overrides all law bearing upon the authority and obligations of the defendants. Under applicable law, defendants are required to approve accommodations that will allow handicapped persons an opportunity to use and enjoy a dwelling as equals among those not handicapped. Defendants are not required to provide more than equal opportunity or more than reasonable accommodation.

The environmental regulations invoked by plaintiffs in this case were not developed and are not to be implemented or enforced to make the proposed facility solely or even primarily one to house handicapped persons. The Conservation Commission permissibly raised the issue of the environmental impact of a facility on Lot 23 with respect to the original proposal for single family residences. The environmental issue was raised without regard to the type of person that would reside in the proposed units, and without regard to the type of unit being proposed. Thus, the state environmental regulations have been reasonably applied.

## IV. Motions to Dismiss from Defendants Napolitano (Docket No. 44) and Hatem (Docket No. 53)

Though dismissing the motion for more definite statement filed early in these proceedings by defendant Pasquelina Napolitano, the court noted in the Memorandum and Order of July 26, 1999, that both the initial complaint and the amended complaint are vague and ambiguous as to allegations against Napolitano in particular, and against the non-city-official defendants generally (Hatem, Sheehy and Napolitano)

and unless clarified in some way and shown to be supported by admissible evidence of clarity and specificity sufficient to survive a later dispositive motion might lead to disposition before trial as a matter of law.

New motions by Napolitano (Docket No. 44) and Hatem (Docket No. 53) are now before the court seeking dismissal under Fed.R.Civ.P. 12(b)(6). Plaintiffs' have filed submissions in opposition to each of the defendants motions to dismiss. Plaintiffs' responses to these new motions fail to satisfy their burden of showing a trialworthy, legal-factual claim.

■ The facts set forth in Plaintiffs' Second Amended Complaint (Docket No. 42, filed September 7, 1999), even when taken as true, fail to state a cognizable claim against defendants Napolitano and Hatem. In their Opposition to defendants' motions to dismiss, plaintiffs persist in their allegations that Napolitano and Hatem, individually and in combination, are responsible for defamation, slander and liable against plaintiffs, thus "creating mental anguish, pain and suffering which [plaintiffs] have a right to advance . . . under the 14th Amendment . . . and under 42 U.S.C. [§ ] 1983." Docket No. 49 at 1. And yet plaintiffs' Second Amended Complaint, despite its 203 paragraphs, lacks any allegation of sufficiently specific facts that could serve as the foundation for plaintiffs' causes of action. Also, plaintiffs' Second Amended Complaint lacks any allegation of sufficiently specific facts on which defendants could rely in properly defending themselves against these causes of action.

■ As an example, plaintiffs' complaint falls short of stating a claim under the heightened pleading requirements for defamation. *See Dorn v. Astra USA*, 975 F.Supp. 388, 395–96 (D.Mass.1997). *See also Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 728 (1st Cir. 1992) *cert. denied*, 504 U.S. 974, 112 S.Ct. 2942, 119 L.Ed.2d 567 (1992) (stating that "a defendant is entitled to knowledge of the precise language challenged as defamatory, and the plaintiff therefore is limited to its complaint in defining the scope of the alleged defamation"); *Acciavatti v. Professional Services Group, Inc.*, 982 F.Supp. 69, 77–78 (D.Mass.1997) (dismissing as "factually deficient" defamation claim which alleged that the defendants "caused false and defamatory statements about [plaintiff] to be published to third parties, thereby injuring his reputation"); *Eyal v. Helen Broadcasting Corp.*, 411 Mass. 426, 432 n. 7, 583 N.E.2d 228 (1991) (stating that "[t]he Massachusetts Supreme Judicial Court has stated that defamation traditionally is a disfavored action, and that courts have applied a stricter standard to complaints for defamation by requiring defamation plaintiffs to plead the elements of their claims with specificity in order to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)") (internal quotation marks omitted).

All that is alleged, as to Pasquelina Napolitano, is her participation in town meetings and her voiced disapproval, as a community member and neighbor of the proposed building site, of the plaintiffs' proposed assisted-living development. Aside from her participation in town meetings, no facts are alleged that would support a conspiracy claim or a cause of action under Massachusetts' laws of defamation, libel or slander or under the 14th Amendment of the United States Constitution. The contentions contained in paragraphs 189 to 199 of the Second Amended Complaint (which are the contentions regarding Napolitano specifically), relate only to Napolitano's concerns about the proposed building development due to her home's proximity to the development and that she voiced during town meetings and during meetings with her attorney and Chiara's attorney. These facts, even taken as true, do not state a cognizable legal claim under any of the state or federal laws under which plaintiffs claim a legal right.

Similarly, as to defendant Victor Hatem, plaintiffs fail to allege facts that would be sufficient to support a cognizable claim under either state or federal law. Defendant Hatem is mentioned in paragraphs 86, 95 and 120–141 of the Second Amended Complaint. In paragraph 86, Plaintiffs allege that he acted in concert with other defendants to defame and slander plaintiffs and to prevent the proposed building of the assisted-living development. Nowhere in plaintiffs' Second Amended Complaint, however, do plaintiffs state any facts that support this alleged conclusion. Even in paragraph 95, where plaintiffs state that Hatem conspired with City Solicitor Lariviere and with Brian Sheehy in order "to defame the character of Chiara," plaintiffs again fail to allege any facts, let alone the specific words that are alleged as defamatory, that would support this alleged conclusion. Finally, paragraphs 120 to 141, paragraphs that are captioned as relating to defendant Hatem in particular, again contain similar alleged conclusions and fail to substantiate any of plaintiffs claims of defamation or conspiracy. *See* Docket No. 41 at ¶¶ 120–141.

Even after an Order from the court for a more definitive statement and a Memorandum from the court warning plaintiffs of the deficiencies in the pleadings, *see* Docket No. 39, plaintiffs have failed in this, their Second Amended Complaint, to satisfy their burden of demonstrating, even on the pleadings, a legal-factual claim under which they would be entitled to move forward in this lawsuit against Napolitano and Hatem and conduct discovery or compel disclosures beyond all discovery that has occurred.

## V. Defendant Sheehy's Motion to Dismiss for Defective or Insufficient Service of Process (Docket No. 58)

▬ Defendant Sheehy (Docket No. 58) has filed a motion to dismiss on the basis of defective or insufficient service of process under Fed.R.Civ.P. 4. Despite the fact that plaintiffs seemed to have failed to effect service of process properly upon any

of the defendants, only Defendant Sheehy makes ineffective service of process the core of his motion to dismiss. (Napolitano does state as a fifth reason for dismissal insufficiency of process under Fed.R.Civ.P. 12(b)(4) and insufficiency of service of process under Fed.R.Civ.P. 12(b)(5), *see* Docket No. 53 at 2, but does not argue this reason in her memorandum of law.)

Sheehy attaches an affidavit to his motion to dismiss that states that the first document he received was a copy of the Plaintiffs' First Amended Complaint. *See* Docket No. 59 at ¶ 2. He also states that he was never served with a copy of the Complaint or with a summons, or any notice or acknowledgment forms or any return envelope with postage prepaid. *See id.* at ¶¶ 2–3. Sheehy does acknowledge that a copy of the Plaintiffs' First Amended Complaint was hand-delivered by Matthew Chiara and a male relative of Mr. Chiara's, Mr. John Foley, to Sheehy's office at 5 Pleasant Street in Methuen, Massachusetts. *See id.* at ¶ 4. Sheehy further states, however, that he does not reside at this address—*i.e.,* it is not his "last and usual place of abode"—and that the service was not effected by a constable as is required by the rule in Massachusetts, the state in which the district court in which this suit was filed is located. *See* Fed. R.Civ.P. 4(e)(1). Sheehy also states that he has not consented to waive service as may be done by mail under Fed.R.Civ.P. 4(d). *See id.* at ¶¶ 5–6. *See also* Docket No. 58 at 1.

Plaintiffs' response and affidavits reflect a misunderstanding and a misapplication of the federal and state rules governing effective service of process. The affidavit of Matthew A Chiara, Docket No. 64, states that Sheehy was served at 5 Pleasant Street because "I believed that he was in charge of a business known as KEBB Property Management." Docket No. 64 at ¶ 4. Chiara also states in his affidavit that Mr. Foley, "a disinterested person" whose services Chiara engaged "to make service on the various Defendants in this action,"

presented "a young lady named Colleen Kelly in the adjacent office" to KEBB Property Management with "the papers on Brian Sheehy's behalf." *Id.* at ¶ 5. Plaintiffs' attorney, Dominic Terranova, further avers in his affidavit, Docket No. 65, that he understood the laws of Massachusetts to have been satisfied as to requirements for service of process because "Brian Sheehy is an officer of two corporations currently active and in good standing both of which are located at 5 Pleasant Street, Methuen, Massachusetts." Docket No. 65 at ¶ 5. Attorney Terranova admits, however, that although Mr. Sheehy travels to Massachusetts for his work as the president and treasurer of Commercial Building Maintenance Services, Inc., Mr. Sheehy resides at 11 F. Street in Rye, New Hampshire. *See id.* at ¶¶ 5–6.

In other words, both the affidavits on behalf of the plaintiffs and the affidavit filed on behalf of Mr. Sheehy, demonstrate that service was not properly effected upon Mr. Sheehy, in his individual capacity, by having a sheriff, deputy or any other person duly authorized by law deliver a copy of the summons and of the complaint to Mr. Sheehy personally or by leaving copies of the summons and of the complaint at his "last and usual place of abode." *See* Fed.R.Civ.P. 4(e)(1); Mass. R.Civ.P. 4(c), (d)(1). Sheehy's Motion to Dismiss Plaintiffs' Complaint for insufficient and deficient service of process will therefore be allowed.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) Motion of Defendant Victor L. Hatem to Dismiss (Docket No. 44, filed September 21, 1999) is ALLOWED;

(2) Motion of Mayor Dennis DiZoglio, Maurice J. Lariviere Jr., Eugene O'Neil, Methuen Inspector, Methuen Commission, Community Director, Community Board, William Manzi to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) (Docket No. 47, filed September 27, 1999) is ALLOWED;

(3) Motion of Defendant Pasquelina Napolitano to Dismiss (Docket No. 53, filed October 6, 1999), is ALLOWED;

(4) Defendant Brian Sheehy's Motion to Dismiss Plaintiffs' Complaints on the Basis of Defective and Insufficient Service of Process (Docket No. 58, filed October 15, 1999) is ALLOWED.

(5) Plaintiffs' Motion to Further Enlarge Time for Filing Opposition Material to Motions Filed by the Municipal Defendants and Defendant Paqualina Napolitano (Docket No. 67, filed November 4, 1999) is DISMISSED as MOOT;

(6) The Clerk is directed to enter forthwith on a separate document a Final Judgment as follows:

For the reasons stated in the Opinion of January 11, 2000, it is ORDERED:

This civil action is dismissed.