SHEILA O'CONNELL *vs*. BANK OF BOSTON.

No. 92-P-594.

Suffolk. April 12, 1993. - October 7, 1994.

Present: ARMSTRONG, PORADA, & GREENBERG, JJ.

*Negligence*, Bank. *Bank. Malicious Prosecution. Libel and Slander. Emotional Distress. Consumer Protection Act*, Bank. *Judge*.

A plaintiff's claim for negligent investigation against her former employer was correctly dismissed, where the employer's security unit did not owe the plaintiff any duty in its investigation of a theft, and where the investigation, even if negligent, added nothing to the plaintiff's claim against the employer for malicious prosecution. [419-420]

At a civil trial, the judge correctly directed a verdict in favor of the defendant on the plaintiff's claim of slander, for want of proof of publication. [421-422]

Where a plaintiff neither alleged nor proved physical harm, the judge correctly directed a verdict for the defendant on a claim for negligent infliction of emotional distress. [422]

An employer's investigation of a theft by an employee and the bringing of a criminal charge were not business dealings such as to provide a basis for a G. L. c. 93A claim by the employee, who had been acquitted. [422]

No error appeared in the judge's instructions to the jury on a claim of malicious prosecution. [422]

The record of a civil trial did not support the plaintiff's contention that the judge was unfair and biased. [422-423]

CIVIL ACTION commenced in the Superior Court Department on May 12, 1988.

The case was tried before *John L. Murphy, Jr.*, J.

*Norman F. Lazarus* for the plaintiff.

*James E. Harvey, Jr.*, for the defendant.

ARMSTRONG, J. The plaintiff, a former teller at the Bank of Boston, appeals from an adverse judgment in her action against the bank for malicious prosecution and other torts. We begin by relating the background — a prior criminal ac-

tion, in which the plaintiff here was the defendant, and was found not guilty.

In her final days as a teller at the bank, the plaintiff, who had given her notice in order to take a higher paying job elsewhere, was, along with the bank, made the victim of a scheme by another employee who stole $4,800 and concealed the theft temporarily with a paper trail that pointed to the plaintiff's having been the perpetrator. The theft would not be revealed until certain account holders, Mr. Davidson and Ms. Sheng,[1] discovered, well after the plaintiff had left the bank, that unauthorized withdrawals had been made from their accounts. Duped by the paper trail, the bank's security branch brought criminal charges against the plaintiff, first alleging theft of $4,000 (the Davidson shortfall), later amended to allege theft of $4,800 (the combined Davidson and Sheng shortfalls). The bank's investigation was impeded because the plaintiff's daily journals for the two critical days were discovered to be missing; but by December, 1986, a record of the critical $4,800 check had turned up in the papers of a teller trainee (see n.1). The trainee was questioned, and her handwriting examined, but the investigators concluded that she knew too little of bank procedures to be the perpetrator. The plaintiff, when questioned, doubtless compounded suspicion by repeatedly (and erroneously) denying that she had been the teller at station two, to which the paper trail led, and, when confronted with film from the bank's cameras showing that she had worked at station two, refused to view it. Her attorney, on the other hand, had prevailed on the bank to engage a respected handwriting expert, who concluded that the various forged documents (see n.1), although

---

[1]The thief's scheme involved a $4,800 check, which had been presented by a Mr. Connors at the plaintiff's teller station and processed as a payment due on a loan. The thief removed this check from the plaintiff's paperwork and substituted a forged $4,800 withdrawal slip drawn on the account of a Ms. Sheng. The Connors' loan payment was thus covered by the $4,800 debit from the Sheng account. (The thief had previously augmented the Sheng account by a forged $4,000 deposit, which had, in effect, been covered by a forged withdrawal of $4,000 from the account of a Mr. Davidson.)

found among the plaintiff's batched checks, were not written in the plaintiff's hand. With doubts growing, a judge of the Boston Municipal Court, on January 7, 1987, ordered the entry of a required finding of not guilty on the criminal charge against the plaintiff.

Now the plaintiff retaliated, bringing the present action against the bank, in which she alleged malicious prosecution, negligent investigation, negligent infliction of emotional distress, slander, and a violation of G. L. c. 93A. Discovery in this civil action unearthed a significant item of evidence the bank had denied having when the criminal action was pending: a continuous film, taken at approximately twenty-second intervals, of the trainee teller's work station the day the purloined $4,800 check was tendered for cash. To the bank's investigator, at first, the film seemed useless; the clock that correlated the frames of the film with particular transactions had not been functioning. He had neglected, however, to consider that the film might be deciphered into meaningful segments by synchronizing it with the teller trainee's daily journal. This was done, painstakingly, in concert by the plaintiff, her counsel, the bank's investigator, and its counsel on December 17, 1990. They succeeded in isolating the sequence of frames taken at 11:43 A.M. on April 4, 1986, when the $4,800 check was cashed at the trainee's teller station. (The time was known by the encoding on the check). The trainee was seen to be sitting with hands folded while a hand — apparently not the plaintiff's — reached in from the right of the picture and operated the trainee's machine. (Interestingly, seven months after the plaintiff's acquittal on the criminal charge, the bank brought similar charges, involving several checks totalling $11,000, against a male employee who had been supervising the trainee teller on April 4, 1986.)

The trial judge in the present action directed verdicts for the bank on the counts for slander, negligent infliction of emotional distress, and c. 93A violations at the close of the plaintiff's evidence, and, at the close of all the evidence, on the count for negligent investigation. The jury received the

case only on the count for malicious prosecution, and they returned their verdict on that count for the bank.

On appeal, the plaintiff contends: that the judge erred in taking from the jury's consideration the four counts mentioned; that his instructions to the jury on the single count he submitted to them were erroneous; and that throughout the trial he displayed bias against the plaintiff, with the result that she was denied a fair trial.

1. *Negligent investigation.* The most significant issue on appeal concerns the count for negligent investigation. We assume, for purposes of decision, that the jury would have been warranted in finding that the investigation carried out by the bank's security unit was deficient: that a more thorough investigation would have looked carefully at the film of the teller trainee's station and at the possibility that an employee other than the plaintiff was the perpetrator — particularly after the handwriting analyst excluded the plaintiff as the author of the forged documents. The assumption does not mean that the negligent investigation count should have gone to the jury. An investigator's duty runs to the person or entity on whose behalf the investigation is conducted, see *Deerfield Plastics Co.* v. *Hartford Ins. Co.*, 404 Mass. 484, 487 (1989), not to the person being investigated. Compare *Logotheti* v. *Gordon*, 414 Mass. 308, 311-312 (1993) (attorney's duty in drafting will runs to testator, not to his heirs at law). A slipshod or incomplete investigation, without more, is a disservice to the one who commissioned the investigation, not to its subject. It is not until the investigation results in ill-founded allegations or charges of criminal conduct that the subject suffers cognizable injury.[2] At that point, the law

---

[2]The plaintiff would have us distinguish between negligent investigation, which she claims is the subject of her count 2, and negligent prosecution, which she agrees is not a basis of liability (as contrasted with malicious prosecution). Yet even the plaintiff's own formulation obscures the distinction: "The gravamen of [the plaintiff's] negligence claim," the plaintiff argues in her brief, "is that once the [b]ank began to investigate the events of April 3-4, 1986, [it] owed her a duty to exercise that amount of care as the reasonably prudent financial institution investigating a present or former employee *before prosecuting and continuing to prosecute* that employee for a crime of moral turpitude" (emphasis supplied).

makes remedies available — actions for defamation, malicious prosecution, tortious infliction of emotional distress — albeit under very circumscribed conditions.

. The individual falsely accused is thus not remediless, but negligence alone does not make his or her accuser liable. The law takes account of conflicting interests in this area: that of the accused, in not being the subject of ill-founded charges; that of the community, in having those reasonably suspected of crime subjected to the process of criminal laws for the common protection; and that of the victimized individual in being free to protect his personal rights by resort to the legal process without the threat of a countersuit for damages if he does not succeed. "All the restrictions resulting from the various interests and principles of social policy are reflected in the usual formula for the tort of malicious prosecution." 4 Harper, James & Gray, The Law of Torts § 4.2, at 408 (2d ed. 1986). See also Prosser & Keeton, The Law of Torts § 119, at 870-871, 876 (5th ed. 1984). It is not enough that the accused be found not guilty; to recover damages he must also prove that his accuser acted from malice, i.e., from improper motives; and his accuser must have lacked probable cause for his charges. *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 100 (1987). *Carroll* v. *Gillespie*, 14 Mass. App. Ct. 12, 18 (1982). Showing the investigation to have been so flawed or superficial that it provided no reasonable basis for thinking the accused guilty could satisfy that burden. On the other hand, in some situations, "knowledge of reliable information relieves the defendant of 'the obligation of sifting and evaluating other possibly exculpatory evidence' regarding the crime of which the plaintiff is suspected." *Id.* at 20, quoting from *Seelig* v. *Harvard Coop. Soc.*, 1 Mass. App. Ct. 341, 347 (1973).

Because an investigation that was merely negligent could not entitle the plaintiff to recover, the judge properly decided that count added nothing to the count for malicious prosecution. The negligent investigation count was properly dismissed.

2. *Slander.* The judge directed a verdict on the slander count for want of proof of publication. The plaintiff argues that this ruling was erroneous for three reasons: (a) the bank in its answer admitted publication in response to a general allegation; (b) and (c) the bank's investigators informed the plaintiff's new employer and the plaintiff's fiancé, respectively, of the charges.

(a) The bank's general admission of publication was not enough by itself to send the count to the jury. "Defamation is the publication of material by one *without a privilege to do so* which ridicules or treats the plaintiff with contempt" (emphasis supplied). *Correllas* v. *Viveiros,* 410 Mass. 314, 319 (1991). The bank explained its general admission of publication as the only answer it could truthfully give in view of its having sworn out the criminal complaint. That publication, however, was the subject of an absolute privilege. See Harper, James & Gray, *supra,* at 515, § 4.11; Restatement (Second) of Torts § 587 (1977). The admission need not be read as applying to the alleged publications to the plaintiff's new employer and her fiancé, and, as the trial showed those to be strenuously denied, it would be unfair to treat them as admitted.

(b) The bank's investigators had two meetings with the plaintiff prior to bringing the criminal charge formally. The first was at the plaintiff's new place of employment, the Shawmut Bank. It is admitted that Bank of Boston security officers informed their counterparts at Shawmut that they were investigating a theft and would like to interview the plaintiff as a former employee. The Shawmut officers made a room available for the interview. The Shawmut officers were not present for the interview, and the Bank of Boston investigators testified that they did not discuss the plaintiff's suspected complicity when they were offered the use of the room. The Shawmut officers were not called to testify. The plaintiff was not treated differently by her Shawmut employer after the interview; and, while it is true that the plaintiff left Shawmut shortly thereafter, she left voluntarily to take a still higher paying job as a railroad conductor. On this

evidence, the jury could not properly draw the inference that criminal allegations were published to her new employer.

(c) The plaintiff brought her fiancé to the second meeting, knowing the subject to be discussed. This was tantamount to publication by the plaintiff, not the bank.[3] The judge ruled correctly that the plaintiff had not proven an unprivileged publication.

3. *Other matters.* The judge correctly directed a verdict on the count for negligent infliction of emotional distress. The plaintiff did not prove (or even allege) that "she suffered physical harm as a result of the conduct which caused the emotional distress," much less "physical harm . . . manifested by objective symptomatology and substantiated by expert medical testimony." *Payton* v. *Abbott Labs,* 386 Mass. 540, 556 (1982). The judge also correctly dismissed the c. 93A count. Just as employment relationships are not regarded as commercial activities within the meaning of that act, *Manning* v. *Zuckerman,* 388 Mass. 8, 13 (1983), an investigation of theft by a business's employees and the bringing of criminal charges, cannot be regarded as business dealings within the meaning of the act. This is not a case of an attempt by a business to collect a commercial debt by improper resort to criminal process. There was no error in the judge's instructions on malicious prosecution. The plaintiff's fourth request was substantially covered in the judge's charge. The fifth request was correctly denied for the reasons stated in part 1 of this opinion. The transcript does not substantiate the plaintiff's complaint that the judge was unfair

---

[3]The plaintiff argues that, because her own disclosure of the charges to her fiancé was foreseeable, the bank should be held responsible for that publication, as if it had directly disclosed the charges to the fiancé. See Annot., "Publication of Allegedly Defamatory Matter by Plaintiff ('Self-publication') as Sufficient to Support Defamation Action," 62 A.L.R. 4th 616 (1988). See also *Miller* v. *Butler,* 6 Cush. 71, 74 (1850) (writer of libelous letter liable for further publication of its contents by the person to whom it was addressed, where further publication was probable consequence of writer's putting it into circulation). To whatever extent the concept of self-publication might have vitality in this jurisdiction, it could not be applied to the bringing of criminal charges without upsetting the balance of interests discussed in part 1, *supra.*

and biased. Faced with the need to keep a protracted trial moving along, the judge at times was brusque. If he showed impatience, it was doubtless explainable by his perceiving some of the counts as borderline frivolous. In our view, however, he was scrupulously fair over-all.

*Judgment affirmed.*