Sweeney, Constance M., J.
The plaintiff, Thomas Moriarty (“Moriarty”), brought a 29-count complaint alleging discrete claims against the various defendants, which arise out of the circumstances surrounding Moriarty’s employment with the City of Holyoke (the “City”). There are several pending motions before the Court. Defendant Melanson, Heath & Co. (“MHC”) moves pursuant to Mass.R.Civ.P. 12(b)(6) to dismiss the claims against it for negligence (Count 24), abuse of process (Count 25), defamation (Count 26), slander/slander per se (Count 27), libel (Count 28), and negligent infliction of emotional distress (Count 29). Moriarty moves to amend his complaint pursuant to Mass.R.Civ.P 15(a) to add additional claims against MHC for negligent misrepresentation, interference with contractual relations, and violation of G.L.c. 93A, §§9, 11. Finally, Defendants Michael J. Sullivan, Nichole Proulx, and City of Holyoke (the “Holyoke Defendants”) have filed a special motion to dismiss pursuant to the “anti-SLAPP” statute, G.L.c. 231, §59H. For the following reasons, MHC’s motion to dismiss Counts 24-29 of Moriarty’s complaint is ALLOWED IN PART AND DENIED IN PART, Moriarty’s “Cross-Motion” to amend his complaint against MHC is DENIED, and the Holyoke Defendants’ special motion to dismiss pursuant to G.L.c. 231, §59H is DENIED.

BACKGROUND

According to the complaint, Moriarty was an employee of the City’s Licensing Commission and Vice-President of NAGE, SEIU, Local R1-122. Defendant Michael J. Sullivan (“Sullivan”) was, at all relevant times, the Mayor of the City. Moriarty alleges that after he opposed Sullivan’s plan to reconsolidate and/or merge City departments, he was subjected to a “pattern of harassment,” including Moriarty’s physical removal from his work station by two Holyoke police officers on December 14, 2001.
In or around December 2001 and February 2002, the City retained MHC to perform an investigation of the Licensing Commission. As a result of the investigation, no process was issued against Moriarty.
On October 18, 2004, Moriarty filed a complaint alleging that the defendants “caused to be publicated [sic] repeated and numerous false statements” about him. Moriarty’s complaint includes a list of 18 newspaper articles that contain allegedly false statements relating to: (1) Moriarty’s improper misappropriation of City funds; (2) Moriarty’s unprofessionalism; (3) Moriarty’s theft of City funds; (4) the need to change the lock on Moriarty’s door and shut dowm his office; and (5) the City Treasurer’s report about Moriariy’s misappropriation of funds and financial irregularities at the Licensing Commission.[3]
On March 7, 2005, the Holyoke Defendants filed a special motion to dismiss pursuant to the anti-SLAPP statute. On October 11, 2005, MHC filed a motion to dismiss Counts 24-29 of Moriarty’s complaint.[4] Two days later, on October 13, 2005, Moriarty filed a “Cross-Motion” to amend his complaint against MHC, which sought to add claims for negligent misrepresentation, interference with contractual relations, and violation of G.L.c. 93A, §§9, 11.

DISCUSSION

I. MHC’s Motion to Dismiss Counts 24-29 of Moriarty’s Complaint

The purpose of Mass.R.Civ.P. 12(b)(6) is to “permit prompt resolution of a case where the allegations in the complaint clearly demonstrate that the plaintiffs claim is legally insufficient.” Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 748 (2006). When evaluating the sufficiency of a complaint pursuant to Rule 12(b)(6), the court accepts as true all of the well-pled factual allegations of the complaint, and draws all reasonable inferences from the complaint in favor of the plaintiff. See Id. at 749, citing, Eyal v. Helen Broad. Corp., 411 Mass. 426, 429 (1991). The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See *256 Harvard Crimson, Inc., 445 Mass. at 749, citing Nader v. Citron, 372 Mass. 96, 98 (1977).

1.Abuse of Process

To sustain an action for abuse of process, a plaintiff should allege and prove that the defendant: (1) used process; (2) for an ulterior or illegitimate purpose; (3) resulting in damage to the plaintiff. See Gutierrez v. MBTA, 437 Mass. 396, 407 (2002). Under Massachusetts law, abuse of process claims have been limited to writs of attachment, process used to institute a civil action, and process related to the bringing of criminal charges. See Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 389-90 (1975). Here, Moriarty has failed to allege any facts in his complaint that show, nor may it be reasonably inferred, that MHC initiated any process against him.[5] Therefore, Moriarty’s claim for abuse of process against MHC must be dismissed.

2.Defamation, Libel, and Slander

Defamation involves the unprivileged publication to a third party of a false statement concerning another that exposes its subject to ridicule or contempt. See Draghetti v. Chmielewski, 416 Mass. 808, 812 (1994). Defamation may be either libel or slander. Libel consists of written defamatory words and slander consists of spoken defamatory words. See id.,id., 416 Mass. at 813 n.4.
Here, Moriarty’s complaint lists 18 newspaper articles, generally, and alleges: “Defendant through its agents and employees made and caused to be publicated [sic] repeated numerous false statements, including the following:
a. the plaintiff improperly misappropriated funds;
b. the plaintiff was unprofessional;
c. the plaintiff stole city funds;
d. the plaintiff was involved in so many misappropriations and irregularities that his office door needed to get a new lock and needed to be shutdown; [and]
e. that the City Treasurer reported financial irregularities with the City of Holyoke Licensing Board."
Moriarty’s complaint avers that these “false statements” were published by MHC “repeatedly, including but not limited to the . . . [18 newspaper articles].”
MHC argues that Moriarty’s defamation claims — as well as those for slander and libel, which are derivative — -fail to state a viable claim under the Supreme Judicial Court’s decision in Eyal v. Helen Broad. Corp., 411 Mass. 426, 432 n.7 (1991), which MHC contends established a heightened standard for pleading defamation.[6] Under such a heightened standard, defamation plaintiffs must plead the elements of their claim with specificity in order to survive a motion to dismiss. See id., and cases cited. Therefore, MHC argues that Moriarty’s failure to plead his defamation claim with specificity necessitates dismissal under Rule 12(b)(6).
Massachusetts, however, has not adopted a heightened pleading standard for defamation claims. As the defamation claim in Eyal was pled with particularity, the footnote cited by MHC discussing the Federal standard was dicta.[7] The SJC explicitly held that the Eyal plaintiffs’ amended complaint was “to be analyzed under the traditional standard governing rule 12(b)(6) motions set forth in Nader v. Citron, 372 Mass. 96, 98 (1977), leaving fatal defects in the potential proof to be more properly decided under Mass.R.Civ.P. 56 . . . after the completion of a more expanded record.” Eyal, 411 Mass. 433 n.7.
Here, Moriarty’s complaint avers that MHC made repeated “false statements,” which caused him damages, “including but not limited to the ... [18 newspaper articles].” Under the traditional standard governing rule 12(b)(6) motions set forth in Nader v. Citron, since it does not appear beyond doubt that Moriarty can prove no set of facts in support of his defamation claim which would entitle him to relief, MHC’s motion to dismiss for failure to state a claim for defamation, libel, and slander[8] must be denied.[9] See Nader, 372 Mass. at 98.

3.Negligence

“An investigator’s duty runs to the person or entity on whose behalf the investigation is conducted, . . . not to the person being investigated.” O’Connell v. Bank of Boston, 37 Mass.App.Ct. 416, 419 (1994) (citations omitted). “A slipshod or incomplete investigation, without more, is a disservice to the one who commissioned the investigation, not to its subject.”[10] Id. Here, Moriarty’s complaint concedes that “Defendant [MHC] was retained by Defendant [Sullivan] and Defendant [City] to conduct an investigation of the Plaintiff and/or City of Holyoke License Commission.” For this reason, MHC’s duty ran to the City and Sullivan, not to Moriarty. Therefore, Moriarty has failed to state a valid claim for negligence against MHC.

4.Negligent Infliction of Emotional Distress

In order to recover for negligently inflicted emotional distress, a plaintiff must first prove negligence. Payton v. Abbott Labs, 386 Mass. 540, 557 (1982). Here, for the reasons established above, MHC did not owe a duty to Moriarty. See O’Connell, 37 Mass.App.Ct. at 419. Without a viable claim of negligence against MHC, Moriarty cannot succeed on his associated claim of emotional distress. See Payton, 386 Mass. at 557. Therefore, Moriarty has failed to adequately state a claim for negligent infliction of emotional distress.

II. Moriarty’s Motion to Amend the Complaint

The decision of whether to grant a motion to amend is within the discretion of the trial judge, “but leave should be granted unless there are good reasons for denying the motion.” Mathis v. Mass. Electric Co., 409 Mass. 256, 264 (1991), citing Mass.R.Civ.P. 15(a). Such “good reasons” include “undue delay, bad faith or dilatory motive on the part of the movant.” Id., *257 quoting Castellucci v. U.S. Fidelity & Guar. Co., 372 Mass. 288, 290 (1977). A motion to amend may be denied where the moving party’s delay in seeking to amend is unexcused. See Mathis, 409 Mass. at 264.
Here, without any credible excuse for his delay, Moriaty seeks to amend his complaint, nearly one year after filing his original complaint, to add three new causes of action against MHC. On numerous occasions over the course of this action, the Court has been forced to refuse pleadings from Moriarty due to their overburdensome size.[11] In this Court’s opinion, the pleadings submitted by Moriarty have been abusive and beyond all bounds of reasonable pleading practice. Yet instead of heeding the repeated admonitions from the Court with regard to the inappropriateness of his pleadings, Moriarty has decided to file an amended complaint which seeks to add new causes of action against MHC. The timing of the instant motion along with Moriarty’s continuing failure to comply with the orders of this Court with regard to his pleadings amounts to undue and unexcused delay. For these reasons, Moriarty’s motion to amend his complaint is denied.

III. The Holyoke Defendants’ Special Motion to Dismiss Pursuant to the Anti-SLAPP Statute G.L.c. 231, §59H

The Holyoke Defendants have filed a special motion to dismiss pursuant to the anti-SLAPP statute, G.L.c. 231, §59H,[12] maintaining that Moriarty’s complaint is in retaliation for their public statements regarding a matter of public concern, namely support for an investigation of irregular activities in the License Commission office. The Holyoke Defendants insist that the statements that are the subject of Moriarty’s complaint were “made in support of public appropriations, for public support, and related to an ongoing government investigation.” Therefore, they argue the statements are protected by the anti-SLAPP statute as “statements made pursuant to a government investigation.” Moriarty counters that the anti-SLAPP statute does not apply to the Holyoke Defendants, as it was intended to protect private citizens, not governmental entities or actors.
The disposition of the instant special motion turns on whether the statements made by the Holyoke Defendants fall within the scope of G.L.c. 231, §59H. In Korbin v. Gastfriend, 443 Mass. 327 (2005), the Supreme Judicial Court held that G.L.c. 231, §59H did not immunize the defendant from liability for statements he made on behalf of the Board of Registration in Medicine as a witness in professional disciplinary proceedings. Looking to the language of the antiSLAPP statute, the SJC determined the legislature did not intend for its protections to apply to those performing services for the government. Id. at 331-32. According to the SJC, the anti-SLAPP statute was enacted “to provide a quick remedy for those citizens targeted by frivolous lawsuits based on their government petitioning activities.” Id. at 331 (emphasis added), citing Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 161-62 (1998). The court interpreted the phrase “based on said party’s exercise of its right of petition under the constitution” as “restricting the statute’s coverage to those defendants who petition the government on their own behalf.” Korbin, 443 Mass. at 332. “In other words,” the SJC reasoned, “the statute is designed to protect overtures to the government by parties petitioning in their status as citizens.” Id. Moreover, the SJC noted that the right of petition protected by the anti-SLAPP státute is the right to petition government for “redress of the wrongs done them, and of the grievances they suffer.’’ Id. at 333 (emphasis in original), citing art. 19 of the Massachusetts Declaration of Rights.
Here, the Holyoke Defendants were not exercising their right, in their status as citizens, to petition or to seek any redress from a government body when they made statements regarding the investigation of the City’s License Commission. On the contrary, the statements made by the Holyoke Defendants, like those at issue in Korbin, were made by those performing services on behalf of the government. In fact, in their brief in support of their instant motion, the Holyoke Defendants admit that the statements were made “to encourage and seek necessary City Council and public support for the consolidation plan, audit funding and the government investigation.” From this, it is clear that the Holyoke Defendants were not seeking redress of the wrongs done them, and, therefore, were not engaged in the type of “constitutional petitioning activity” protected by G.L.c. 231, §59H. For this reason, the Holyoke Defendants’ special motion to dismiss pursuant to the anti-SLAPP statute is denied.

ORDER

For the foregoing reasons, it is hereby ORDERED that: (1) MHC’s Motion to Dismiss Counts 24-29 of the. Plaintiffs Complaint is ALLOWED as to Counts 24, 25, and 29 and DENIED as to Counts 26, 27, and 28; (2) Moriariy’s “Cross-Motion” to Amend His Complaint Against MHC is DENIED; and (3) the Special Motion of the Holyoke Defendants to Dismiss Pursuant to G.L.c. 231, §59H is DENIED.

While Moriarty did not attach the 18 newspaper articles to his complaint, the complaint does specifically list them. See Complaint at ¶¶32, 37, 89, 94, 100, 157, 163, 170. Because several of Moriarty’s claims are dependent upon the statements published in the cited newspaper articles, said articles become incorporated into the pleadings and may be reviewed by this Court in deciding MHC’s motion to dismiss under Rule 12(b)(6) without converting the motion into one for summary judgment. See Harhen v. Brown, 431 Mass. 838, 839-40 (2000), citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996).

After Moriarty filed a voluminous “Motion in Opposition” to the Holyoke Defendants’ special motion to dismiss on April *258 28, 2005, this Court refused to rule on the anti-SLAPP matter until both parties streamlined their motions. The Court received the Holyoke Defendant’s summarized special motion on November 11, 2005. On the same date, the Court received Moriarty’s minimally-streamlined “motion in opposition.”

In his “Memorandum in Opposition” to the instant motion, Moriarty attempts to transform his pled claim for abuse of process into one for malicious prosecution. However, as a claim for malicious prosecution was not contained in Moriarty’s complaint, it is immaterial to MHC’s motion to dismiss. The Court will treat Moriarty’s claims as they were pled.

MHC cites a decision by the First Circuit Court of Appeals that referred to “the heightened pleading standard imposed by Massachusetts law" in defamation actions. Andresen v. Diario, 349 F.3d 8, 16-17 (1st Cir. 2003), citing Eyal 411 Mass. at 432 n.7.

It is also notable that this case does not involve a defamation claim against the news media. See Eyal 411 Mass. at 433 n.7, citing Cefalu v. Globe Newspaper Co., 8 Mass.App.Ct. 71, 74 (1979) (indicating that, because of First Amendment concerns, courts have been more favorably inclined to protect the interests of the press and news media than other private or public plaintiffs).

As Moriarty’s complaint alleges defamatory statements, “including but not limited to” the 18 newspaper articles, it is not beyond doubt that one or more of these statements could have been spoken. Therefore, MHC’s motion to dismiss Moriarty’s claim for slander (i.e., spoken defamation) is also denied.

While Moriarty's pleadings are sufficient to meet the low threshold under Rule 12(b)(6), nothing in this decision should be construed as precluding a motion for summary judgment on these claims. Upon such a motion, this Court could examine the alleged defamatory statements and decide whether there are any fatal defects in the potential proof.

Moriarty correctly notes that these passages quoted from the Appeals Court’s decision in O'Connell are followed by the lines: “It is not until the investigation results in ill-founded allegations or charges of criminal conduct that the subject suffers cognizable injury. At that point, the law makes remedies available—actions for defamation, malicious prosecution, tortious infliction of emotional distress—albeit under very circumscribed circumstances.” O’Connell 37 Mass.App.Ct. at 419-20 (emphasis added). However, as italicized passage makes clear, the potential causes of action available in these “very circumscribed circumstances” do not include negligence.

 For example, Moriarty’s “Motion in Opposition” to the Holyoke Defendant’s special motion to dismiss consisted of thousands of pages, including an entire folder made up almost entirely of copies of appellate cases that should have been cited and discussed within the confines of a memorandum.

G.L.c. 231, §59H, in pertinent part, provides: “In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party’s exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss.”